**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In re:                                                          Case No.: 19-12804-JKO
                                                                Chapter 11
PATRICE M. TORRENCE DPM, LLC,

      Debtor-in-Possession.

_____/

**DEBTOR'S COMBINED DISCLOSURE STATEMENT**
**AND PLAN OF REORGANIZATION**

Dated:  July 5, 2019

By: /s/ Patrice Torrence                        By: /s/ Chad Van Horn, Esq.
    Patrice Torrence                              Chad Van Horn, Esq.
    *Owner and Managing Member*          Florida Bar No. 64500
                                                                *Attorney for Debtor*

                                                                **VAN HORN LAW GROUP, P.A.**
                                                                330 N. Andrews Ave., Suite 450
                                                                Fort Lauderdale, Florida 33301
                                                                (954) 765-3166
                                                                (954) 756-7103 (facsimile)
                                                                Email: Chad@cvhlawgroup.com

**IMPORTANT:**   THIS COMBINED DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION, PURSUANT TO §§ 1125 AND 1129 OF THE BANKRUPTCY CODE, CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PROPOSED PLAN OF REORGANIZATION.  PLEASE REVIEW THIS DOCUMENT WITH CARE.

# **CONTENTS**

SECTION 1:  Introduction.................................................................................................5

SECTION 2:  Background of the Debtor..........................................................................6

   (a)      Business of the Debtor.........................................................................6

   (b)      Events Leading to Chapter 11 Filing...................................................6

   (c)      Insiders of the Debtor..........................................................................6

   (d)      Management of the Debtor after Bankruptcy.......................................7

   (e)      Current and Historical Financial Condition. .......................................7

SECTION 3:  GENERAL INFORMATION.....................................................................7

   (a) Brief Overview of Chapter 11 ................................................................7

      (1) Property of the Estate ........................................................................7

      (2) Automatic Stay..................................................................................7

      (3) Voting ................................................................................................7

      (4) Confirmation Standards ....................................................................9

      (5) Liquidation Analysis .......................................................................10

      (6) Feasibility........................................................................................10

SECTION 4:  TREATMENT OF CLAIMS AND EQUITY INTERESTS. ................10

   (a) Allowed Administrative Claims ..........................................................10

   (b) Priority Tax Claims .............................................................................11

   (c) U.S. Trustee Fees ................................................................................11

   (d) Classes of Secured Claims..................................................................12

   (e) Classes of Priority Unsecured Claims ................................................13

   (f) Undisputed General Unsecured Claims ..............................................14

   (g) Summary of General Unsecured Claims .............................................14

   (h) Disputed General Unsecured Claims..................................................14

   (i) Classes of Equity Interest Holders .....................................................15

SECTION 5:  DESIGNATION OF IMPAIRMENT. ......................................................15

   (a) Designation of Impaired and Unimpaired Classes. ............................15

   (b) Voting of Claims and Equity Interests. ..............................................15

SECTION 6:  Provisions Covering Distribution, General Provisions.........................15

   (a) Method of Distribution Pursuant to the Plan .....................................16

   (b) Disputed Claims .................................................................................17

   (c) Disallowed Claims..............................................................................17

   (d) Disbursing Agent................................................................................17

(e) No Recourse ........................................................................................................ 17

(f) Amendments to Claims ........................................................................................ 18

(g) Post-petition Interest on Claims ......................................................................... 18

(h) Unclaimed Distributions ..................................................................................... 18

SECTION 7:  ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS. ............... 18

SECTION 8:  PROVISIONS FOR EXECUTION AND IMPLEMENTATION. ........................ 19

(a) Funding .............................................................................................................. 19

(b) Effectiveness of Securities, Instruments and Agreements .................................. 19

(c) Approval of Agreements ...................................................................................... 19

(d) No Change of Control ......................................................................................... 20

(e) Administration After the Effective Date ............................................................. 20

(f) Term of Bankruptcy Injunction or Stays ............................................................ 20

(g) Revesting of Assets ............................................................................................. 20

(h) Discharge of Debtor ........................................................................................... 20

(i) Injunction Related to Confirmation .................................................................... 20

(j) Votes Solicited in Good Faith ............................................................................. 21

(k) Legal Proceedings .............................................................................................. 21

(1) Potential Bankruptcy Causes of Action ........................................................ 21

(2) Preservation of Claims and Causes of Action .............................................. 22

(l) Notices ................................................................................................................ 22

SECTION 9:  CONFIRMATION AND EFFECTIVENESS OF CDP. ..................................... 22

(a) Conditions Precedent to Confirmation ............................................................... 22

(b) Effect of Failure ................................................................................................. 23

(c) Waiver of Conditions .......................................................................................... 23

SECTION 10:  RETENTION OF JURISDICTION. ................................................................ 23

SECTION 11:  TAX CONSEQUENCES OF CDP. ................................................................. 24

(a) United States Federal Income Tax Consequences to the Debtor ......................... 25

(b) United States Federal Income Tax Consequences to Claimants ......................... 26

(c) Information Reporting and Backup Withholding ................................................. 26

SECTION 12:  MISCELLANEOUS PROVISIONS. ............................................................... 27

(a) Effectuating Documents and Further Transactions. ............................................ 27

(b) Post-Effective Date Fees and Expenses ............................................................... 27

(c) Amendment or Modification of Plan ................................................................... 27

(d) Severability ......................................................................................................... 27

(e) Filing of Additional Documents ........................................................................... 28

(f) No Admissions .................................................................................................... 28

(g) Substantial Consummation ................................................................................. 28

(h) Inconsistency ..................................................................................................... 28

(i) Remedy of Defects ............................................................................................. 28

SECTION 13:  CONCLUSION ................................................................................. 28

APPENDIX A:  DEFINITIONS ................................................................................. 29

Exhibit "A" – Projections and Plan Distributions
Exhibit "B" – Liquidation Analysis
Exhibit "C" – May 2019 Monthly Operating Report

## SECTION 1:  INTRODUCTION.

PATRICE M. TORRENCE DPM, LLC (the "Debtor") submits this *Combined Disclosure Statement and Plan of Reorganization* (the "CDP"), pursuant to §§ 1125 and 1129 of the Bankruptcy Code, to all of Debtor's creditors and parties in interest.  The CDP contains information about the Debtor and details the Debtor's reorganization.

**YOUR RIGHTS MAY BE AFFECTED.**

**The CDP should be read in its entirety, along with all exhibits, before making a decision to accept or reject the plan of reorganization.**

**You should read the CDP carefully and discuss CDP with your attorney.**

**If you do not have an attorney, you may wish to consult one.**

The CDP describes:  (1) the Debtor and significant events during the bankruptcy case; (2) how the CDP proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed); (3) who can vote on or object to the CDP; (4) what factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the CDP; (5) why the Debtor believes the CDP is feasible, and how the treatment of your claim or equity interest under the CDP compares to what you would receive on your claim or equity interest in an orderly liquidation; and (6) the effect of confirmation of the CDP.

**NO STATEMENTS, INFORMATION OR REPRESENTATIONS CONCERING THE DEBTOR, PARTICULARLY AS TO ITS FUTURE INCOME OR FINANCIAL CONDITION, ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS CDP.  THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  THE DEBTOR DOES NOT AND CAN NOT WARRANT AND REPRESENT THE ACCURACY OF THE INFORMATION CONTAINED HEREIN, BUT GREAT EFFORT HAS BEEN MADE TO ENSURE THE ACCURACY OF THE INFORMATION.**

**UPON FILING THE CDP, THE DEBTOR WILL REQUEST THE BANKRUPTCY COURT TO CONDITIONALLY APPROVE THE CDP AS CONTAINING SUFFICIENT INFORMATION, UNDER § 1125 OF THE BANKRUPTCY CODE, TO ENABLE A HYPOTHETICAL REASONABLE INVESTOR TO MAKE AN INFORMED DECISION TO ACCEPT OR REJECT THE CDP. REGARDLESS OF THE BANKRUPTCY COURT'S DECISION TO CONDITIONALLY APPROVE THE CDP, THE BANKRUPTCY COURT DID NOT PASS A DECISION UPON THE PLAN. NEITHER THIS CDP NOR ANY ORDER THAT CONDITIONALLY APPROVES THE CDP ARE TO BE CONSTRUED AS APPROVAL OR ENDORSEMENT AS TO THE FAIRNESS OR MERITS OF THE PLAN BY THE BANKRUPTCY COURT.**

## SECTION 2:  BACKGROUND OF THE DEBTOR.

### *(a)      Business of the Debtor.*

The Debtor is a Florida limited liability corporation founded on May 19, 2009, when it registered with the State of Florida.  The business leases an office at 330 NW 49th Avenue, Plantation, FL 33317.  The Debtor has been in continuous operations as a medical practice with a specialization on podiatry since its inception.

The Debtor's principal, Patrice M. Torrence, founded the Debtor and has been its only practitioner.  Ms. Torrence is a licensed podiatric physician who serves the tri-county areas of Miami-Dade, Broward and West Palm Beach.  Ms. Torrence is the 100% owner of the Debtor and performs all of the house calls for the Debtor's clients.

The Debtor has two other employees:  Kevin Torrence and Gina Antunez.  Mr. Torrence works for the Debtor as office personnel and is a W-2 employee.  Ms. Antunez works for the Debtor as contract labor and assists the Debtor with billing Medicare patients, which is a majority of the Debtor's revenue.

### *(b)      Events Leading to Chapter 11 Filing.*

Prior to filing, the Debtor switched its medical billing service provider in January 2017 and sustained a significant loss in revenue due to inadequate billing services.  Upon the advice and procurement by a business advisor, Allan B. Dombrow & Associates, P.A., the Debtor and its principal to entered into several merchant cash advances that required daily debits on the Debtor's account for repayment.  Those creditors are 1st Global Capital, Fundation Group LLC, and Quick Bridge (DE 1, pp. 13-14).  Ultimately, the Debtor was unable to afford the repayment required under the agreements and defaulted.

The Debtor and its principal also entered into two agreements with Secured Creditor Ocean Bank ("OB") for commercial loans in the amount of $150,000.00 and $50,000.00.  OB was granted a first priority lien on all of the Debtor's assets as collateral for the loans.  Debtor subsequently defaulted on the loans and OB filed a state court complaint against the Debtor and its principal on January 17, 2019.  On March 1, 2019, the Debtor filed in chapter 11 to reorganize the debts and continue operations.

### *(c)      Insiders of the Debtor.*

As defined by § 101(31) of the United States Bankruptcy Code, the insider of the Debtor is Patrice Torrence, the 100% owner and Managing Member.  Ms. Torrence earned $342,048.76 in 2018 (DE 12).

### (d)    *Management of the Debtor after Bankruptcy.*

After the effective date[1] (the "Effective Date") of the order confirming the Debtor's CDP, the Debtor's entity will continue to operate.  Patrice Torrence will continue as the Managing Member of the confirmed Debtor.

### (e)    *Current and Historical Financial Condition.*

The Debtor continues to operate the business as a debtor-in-possession.  The cash on hand generated from post-petition operations of the Debtor is $8,022.82 and is reflected in the Debtor's current report for May 2019 (DE 48).

The Debtor has financially lean months from January to March when deductibles on Medicare are being used.  For this reason, the Debtor intends to retain earnings through the last three quarters of the year in order to be able to meet the CDP obligations.

## SECTION 3:  GENERAL INFORMATION.

### (a)  *Brief Overview of Chapter 11*

#### (1)  Property of the Estate

The commencement of a chapter 11 bankruptcy case creates an estate comprising of all the legal and equitable interests of the debtor in property as of the date the petition is filed. Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession" unless the bankruptcy court orders the appointment of a trustee. No trustee has been appointed in the Debtors' case.

#### (2)  Automatic Stay

Pursuant to 11 U.S.C. § 362, the filing of a chapter 11 petition operates as an automatic stay applicable to all entities of various actions to collect pre-petition claims from the Debtors or otherwise interfere with their property or businesses.

#### (3)  Voting

##### (A)  Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if any party believes that the requirements for confirmation are not met.

---

[1]    The Effective Date of this Plan is the first business day following the date that is thirty (30) days after the entry of the order of confirmation. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.  As provided in 11 U.S.C. § 1124, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either: (1) the Debtor has scheduled the claim on its schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated; or (2) the creditor has filed a proof of claim or equity interest, and no objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless, after notice and hearing, the Court either overrules the objection or allows the claim or equity interest voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The Debtor will file any objections to filed proofs of claim prior to the balloting process described herein.

### (B)  Who May Not Vote

The holders of the following types of claims and equity interests are not entitled to vote to accept or reject the Plan:  (1) holders of claims and equity interests that have been disallowed by an order of the Court; (2) holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been allowed for voting purposes;  (3) holders of claims or equity interests in unimpaired classes;  (4) holders of claims entitled to priority pursuant to 11 U.S.C. §§ 507(a)(2), (a)(3), and (a)(8); (5) holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and (6) administrative expense claimants.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

### (C)  Who Can Vote in More Than One Class?

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject the Plan is each capacity, and should cast one ballot for each claim.

### (D)  Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless: (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by a cramdown on non-accepting classes.

(E)  Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the plan.

A class of equity interests accepts the Plan if the holder of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

(F)  Treatment of Nonaccepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by 11 U.S.C. § 1129(b). A Plan that binds nonaccepting classes is commonly referred to as a cramdown plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of 11 U.S.C. § 1129(a)(8), does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a cramdown confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

### (4)  Confirmation Standards

The proponent of the Plan must meet all applicable requirements of 11 U.S.C. § 1129(a) (except 11 U.S.C. § 1129(a)(8) if the proponent proposes to seek confirmation of the Plan under the provisions of 11 U.S.C. § 1129(b)). These requirements include, among other things, that: (a) the Plan comply with applicable provisions of Title 11, United States Code and other applicable law; (b) the Plan be proposed in good faith; (c) at least one impaired Class of claims must accept the Plan, without counting votes of insiders; (d) the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and (e) the Plan must be feasible. These requirements are not the only requirements listed in 11 U.S.C. § 1129, and they are not the only requirements for confirmation.

The Bankruptcy Court may confirm a plan of reorganization even though fewer than all the classes of impaired Claims and Interests have accepted the plan. If a plan of reorganization is to be confirmed despite the rejection of a class of impaired Claims or Interests, then the proponent of the plan must show, among other things, that the plan of reorganization does not discriminate unfairly and that the plan is fair and equitable with respect to each impaired class of Claims or Interests that has not accepted the plan of reorganization.

### (5)  Liquidation Analysis

To confirm a plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and interest holders would receive in a chapter 7 liquidation.

### (6)  Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

#### (A)  Ability to Initially Fund Plan

The Debtor believes that he will have enough cash on hand on the effective date of the Plan to pay all claims and expenses that are entitled to be paid on that date.

#### (B)  Ability to Make Future Plan Payments and Operate Without Further Reorganization.

The plan proponent must also show that he will have enough cash over the life of the Plan to make the required Plan payments.

## SECTION 4:  TREATMENT OF CLAIMS AND EQUITY INTERESTS.

The treatment of and consideration to be received by holders of Allowed Claims or Allowed Interests pursuant to this Section and the CDP shall be in full satisfaction, settlement, release, extinguishment, and discharge of their respective Claims against or interests in the Debtor and the estate, except as otherwise provided in the Plan or the Confirmation Order. The holders of liens satisfied, discharged, and released under the Plan shall execute any and all documentation reasonably requested by the Debtor or the Reorganized Debtor evidencing the satisfaction, discharge and release of such liens.

### (a)  Allowed Administrative Claims

Each holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release and discharge of such Allowed Administrative Claim, either (A) an amount equal to the unpaid amount of such Allowed Administrative Claim in cash commencing on the later of (i) the Effective Date, (ii) the date that such Claim becomes an Allowed Administrative Claim by a Final Order, or (iii) a date agreed to by the Claimholder and the Debtor; or (B) such other treatment (i) as may be agreed upon in writing by the Claimholder and the Debtor, or (ii) as the Bankruptcy Court has ordered or may order. Notwithstanding the foregoing, Allowed Administrative Claims representing (a) liabilities, accounts payable or other Claims or obligations incurred in the ordinary course of business of the Debtor consistent with past practices subsequent to the Petition Date, shall be paid or performed by the Debtor in accordance with the terms and conditions of the particular transactions relating to such liabilities and any

agreements or contracts relating thereto; provided, notwithstanding any contract provision, applicable law or otherwise, that entitles a holder of an Allowed Administrative Claim to post-petition interest, no holder of an Allowed Administrative Claim shall receive post-petition interest, on account of such Claim.

Compensation of professionals and reimbursement of expenses incurred by professionals are Administrative Claims pursuant to §§ 503(b)(2), 503(b)(3), 503(b)(4) and 503(b)(5) of the Code (the "Professional Fees and Expenses Claims"). All payments to Professionals for Professional Fees and Expenses Claims will be made in accordance with the procedures established by the Code, the Rules and the Court relating to the payment of interim and final compensation for services rendered and reimbursement of expenses. The Court will review and determine all applications for compensation for services rendered and reimbursement of expenses.

All entities seeking an award by the Court of Professional Fees and Expenses shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date pursuant to § 330 of the Code and Rule 2016 by the date that is ten (10) days after the Effective Date or such other date as may be fixed by the Court.

### (b)  Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall receive, at the sole discretion of the Debtor, and in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (A) an amount equal to the unpaid amount of such Allowed Priority Tax Claim in cash commencing on the later of (i) the Effective Date, (ii) the date that such Claim becomes an Allowed Priority Tax Claim by a Final Order, or (iii) a date agreed to by the Claimholder and the Debtor; (B) as provided in § 1129(a)(9)(C) of the Bankruptcy Code, cash payments made in equal monthly installments beginning on the Effective Date, with the final installment payable not later than the sixtieth (60th) month following the Petition Date, together with interest (payable in arrears) on the unpaid portion thereof at 6% from the Effective Date through the date of payment thereof; or (C) such other treatment as to which the Debtor and such Claimholder shall have agreed in writing or the Bankruptcy Court has ordered or may order; provided, however, that the Debtor reserves the right to pay any Allowed Priority Tax Claim, or any remaining balance of any Allowed Priority Tax Claim, in full at any time on or after the Effective Date without premium or penalty; and, provided further, that no holder of an Allowed Priority Tax Claim shall  be entitled to any payments on account of any pre-Effective Date interest accrued on or penalty arising before or after the Petition Date with respect to or in connection with such Allowed Priority Tax Claim.

### (c)  U.S. Trustee Fees

All fees required to be paid by 28 U.S.C. § 1930(a)(6) ("U.S. Trustee Fees") will accrue and are required to be  timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Specifically, the Debtor is obligated to  pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), through the date of confirmation of this Plan,

within fourteen (14) business days of the entry of an order confirming this Plan. These fees have not been paid. Furthermore, the Reorganized Debtor is obligated to file with the Court post-confirmation Quarterly Operating Reports and pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another Chapter under the U.S. Bankruptcy Code.

The following chart lists the Debtor's estimated Administrative expenses and their proposed treatment under the Plan:

| TYPE | ESTIMATED AMOUNT OWED | PROPOSED TREATMENT |
| --- | --- | --- |
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $0.00 (Paid in Regular Course of Business) | Paid in full on the Effective Date of the Plan, or according to terms of obligation, if later. The Debtor has been paying post-petition expenses in the normal course, and does not believe that any amounts are due and owing. |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $0.00 | N/A |
| Professional Fees, as approved by the Court | Est. $21,000.00 | Paid in full on the Effective Date of the Plan, or according to a separate agreement, or according to Court order if such fees have not been approved by the Court on the Effective Date of the Plan. |
| Clerk's Office Fees | $0.00 | N/A |
| Other Administrative Expenses | $0.00 | N/A |
| Office of the U.S. Trustee Fees | Est. $650.00 | Paid in full on the Effective Date of the Plan. |
| **TOTAL** | **Est. $21,650.00** | |

### (d)  Classes of Secured Claims

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to set off) to the extent allowed as secured claims under 11 U.S.C. § 506. The following chart identifies the Plan's proposed treatment of secured claims against the Debtor.

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Secured Claim of Ocean Bank<br><br>Total Claim Amount: $149,046.07<br><br>Total Plan Payment: $172,889.00<br><br>Plan Payment Term: 5 years<br><br>Monthly Payment: $2,881.48 | Impaired | Class 1 consists of the secured claim of Ocean Bank. The total amount of the secured claim is $149,046.07 as of July 3, 2019.<br><br>Ocean Bank will receive monthly payments on its secured claim, with 6% interest, until the claim is paid in full.<br><br>The CDP will not discharge Ms. Torrence, individually, of her personal guaranty to Ocean Bank.<br><br>Ocean Bank will not collect on the debt against Ms. Torrence, individually, as long as the payments of the CDP are timely provided. |

| Class | Impairment | Treatment |
|---|---|---|
| Class 2 – Secured Claim of Fundation Group LLC<br><br>Total Claim Amount: $25,411.32<br><br>Total Plan Payment: $25,411.32<br><br>Plan Payment Term: 5 years<br><br>Debtor Monthly Payment: $211.76<br><br>Individual Monthly Payment: $211.76 | Impaired | Class 2 consists of the secured claim of Fundation Group LLC. The total amount of the secured claim is $25,411.32.<br><br>Fundation Group LLC will receive monthly payments on its secured claim until the claim is paid in full.<br><br>Patrice Torrence will pay 50% of the monthly payment individually.<br><br>Fundation Group LLC will not collect on the debt against Ms. Torrence, individually, as long as the payments of the CDP are timely provided. |

### (e)  Classes of Priority Unsecured Claims

Certain priority claims that are referred to in 11 U.S.C. §§ 507(a)(1), (4), (5), (6) and (7) are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the Effective Date of the Plan equal to the Allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.  The follow chart identifies the Plan's proposed treatment of priority unsecured claims against the Debtor.

| Class | Impairment | Treatment |
|---|---|---|
| Class 3 – Priority Unsecured Claim of the Internal Revenue Service<br><br>Total Claim Amount: $10,545.99<br><br>Total Plan Payment: $12,003.00<br><br>Plan Payment Term: 52 months<br><br>Monthly Payment: $230.82 | Unimpaired | Class 3 consists of the priority unsecured claim of the Internal Revenue Service. The total amount of the claim is $10,545.99.<br><br>The Internal Revenue Service will receive monthly payments, with 6% interest, on its claim, until the claim is paid in full. |

### (f)  Undisputed General Unsecured Claims

Undisputed general unsecured claims are not secured by property of the estate and are not entitled to priority under 11 U.S.C. § 507(a). The following chart identifies the CDP's proposed treatments of undisputed general unsecured claims against the Debtor.

| Class | Impairment | Treatment |
|---|---|---|
| Class 4 – Undisputed General Unsecured Creditors<br><br>Total Claims Amount: $90,002.94<br><br>Plan Payment Term: 5 years<br><br>Distribution percentage: 10.00% | Impaired | Class 4 consists of the undisputed general unsecured claims. The total amount of claims is $90,602.94.<br><br>The allowed general unsecured claims will receive a total of $9,000.30 to be paid in quarterly installments over 5 years.<br><br>Exhibit "A" details the repayment obligations of the Debtor with respect to Class 4. |

### (g)  Summary of General Unsecured Claims

The Debtor's scheduled and unsecured claims are set forth in Schedule F and in the claims register. The aggregate amount of claims included in Class 3 as of July 5, 2019 is $90,002.94.  Based upon the distribution amount, the allowed unsecured claimants will receive a distribution of 10.00%.

### (h)  Disputed General Unsecured Claims

The Debtor's schedules have three disputed claims: Fundation Group LLC, 1st Global Capital and Quick Bridge.  Fundation Group LLC filed a proof of claim (no. 2-1), but no other claims have been filed with respect to the disputed claims.  The bar date to file a proof of claim was July 1, 2019.  Therefore, the claims of 1st Global Capital and Quick Bridge will not receive a distribution from the CDP and will discharged on confirmation.  The following chart identifies the CDP's proposed treatment of disputed general unsecured claims against the Debtor.

| Class | Impairment | Treatment |
|-------|------------|-----------|
| Class 5 – Disputed General Unsecured Creditors<br><br>Total Claims Amount: $37,777.20<br><br>Plan Payment Term: N/A<br><br>Distribution percentage: 0.00% | N/A | Class 5 consists of the disputed general unsecured claims. No proofs of claim were filed for the two disputed claims of 1st Global Capital and Quick Bridge. The total amount of claims is $37,777.20.<br><br>The disputed general unsecured claims will receive a total of $-0-. |

### (i)  Classes of Equity Interest Holders

Upon the effective date of the Debtor's CDP, Patrice Torrence shall remain equity shareholders in the newly reorganized Debtor in her pre-petition equity amounts. Ms. Torrence shall continue new value by providing payment to Class 2.

## SECTION 5:  DESIGNATION OF IMPAIRMENT.

### (a)  Designation of Impaired and Unimpaired Classes.

Class 1, 2, and 4 are impaired and entitled to vote on the CDP.

### (b)  Voting of Claims and Equity Interests.

The Bankruptcy Code entitles only holders of impaired claims or equity interests who receive some distribution under a proposed plan to vote to accept or reject that plan. Holders of claims or equity interests that are unimpaired under a proposed plan are conclusively presumed to have accepted that plan and are not entitled to vote on it. Holders of classes of claims or equity interests that will receive no distributions under a proposed plan are conclusively presumed to reject that plan and, therefore, also not entitled to vote on it. 11 U.S.C. § 1126(f)-(g).

## SECTION 6:  PROVISIONS COVERING DISTRIBUTION, GENERAL PROVISIONS.

The rights afforded in this Plan and the payments and distributions to be made hereunder shall be in exchange, satisfaction, discharge, and release of all existing claims of any kind, nature or description whatsoever against Debtor or any of its assets or properties; and, except as otherwise provided herein, upon the Effective Date, all existing claims against the Debtor shall be, and be deemed to be, exchanged, satisfied, discharged, and released in full; and all holders of claims shall be precluded from asserting against the Debtor or its assets or properties or successors in interest, any other or further claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

The distributions that are made to the various classes of creditors hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any creditor of a senior class by

reason of claimed contractual subordination rights, so that each creditor will have, receive, and retain the sole and exclusive benefit of the distributions set forth in this Plan.

Except as otherwise provided by this Plan, upon the consummation date, title to all assets and properties dealt with by this Plan shall vest in the Debtor or its successor in interest, free and clear of all claims and the Confirmation Order shall be a discharge of Debtor's liabilities, except as provided for herein.

Debtor is authorized to make all cash payments directly or through one or more disbursing agents who shall serve without further fee.

Except as provided herein and subject to confirmation of the Debtor's CDP, Debtor reserves the right to pursue any action against third parties, including but not limited to causes of action against creditors of the estate in state court, U.S. District Court, or appellate court against third parties, including causes related to the claims against this estate and any vendor actions that may later arise.

Creditors may amend their proofs of claims prior to the Confirmation of Debtor's Plan and the actual aggregate amount of Allowed Claims may differ significantly from the amounts used for the purposes of Debtor's estimates. As a result, Debtor reserves for itself the right to object to all objectionable proofs of claims.

### (a)  Method of Distribution Pursuant to the Plan

Subject to Rule 9010, and except as otherwise provided herein, all distributions under the CDP shall be made by the Reorganized Debtor to the holder of each Allowed Claim at the address of such holder as listed on the Schedules and/or Proof of Claim as of the distribution record date unless the Debtor or Reorganized Debtor has been notified in writing of a change of address, including by the filing of a Proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

I.    Any payment of Cash made by the Reorganized Debtor pursuant to the CDP shall be made by check drawn on a domestic bank or by wire transfer.

II.   Any payment or distribution required to be made under the CDP on a day other than a Business Day shall be made on the next succeeding Business Day.

III.  Any distributions of Cash or other property pursuant to the CDP that is unclaimed for a period of six (6) months after the distribution date shall constitute Unclaimed Funds and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

IV.   Unless otherwise provided herein, all initial distributions and deliveries to be made on the Effective Date shall be made on the initial distribution date. Subsequent distributions shall be made in accordance with the terms set forth in the CDP.

V.      At the close of business on the distribution record date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims. The Debtor shall have no obligation to recognize any transfer of any Claims occurring after the distribution record date; provided, however, that the foregoing will not be deemed to prohibit the sale or transfer of any Claim subsequent to the distribution record date and prior to the Effective Date.  The Debtor shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the distribution record date.

### (b)  Disputed Claims

Notwithstanding any other provision of the Plan, if any portion of a Claim is disputed, the full amount of such Claim shall be treated as a Disputed Claim for purposes of this Plan, and no payment or Distribution provided under the CDP shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim or Allowed Equity Interest (in whole or in Part).

### (c)  Disallowed Claims

All Claims held by Persons against whom the Debtor or Reorganized Debtor has commenced an Action under §§ 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Code, shall be deemed "disallowed" Claims pursuant to § 502(d) of the Code and holders of such Claims shall not be entitled to vote to accept or reject the CDP. Claims that are deemed disallowed shall continue to be disallowed for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the Estate from such party have been paid.

### (d)  Disbursing Agent

The Reorganized Debtor, or such Person(s) as the Reorganized Debtor may designate with approval of the Court, will act as Disbursing Agent under the CDP with respect to all Distributions to holders of Claims and Equity Interests, and will make all distributions required to be distributed under the applicable provisions of the CDP.

### (e)  No Recourse

Notwithstanding that the Allowed Amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Code and Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Disbursing Agent, the Debtor, the Reorganized Debtor, the Equity Security Interests or any of its current managers, officers, directors, employees, counsel, advisor, respective professionals, consultants, or Affiliates or their respective successors or assigns, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under § 502(j) of the Code. **THE**

**ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS**.

### (f)  Amendments to Claims

A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim, or as otherwise permitted by the Court, the Rules or applicable law. After the Confirmation Date, a Claim may not be amended without the authorization of the Court. Any amendment to a Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtor, the Reorganized Debtor or the Estate, unless the Claim holder has obtained prior Court authorization for the filing of such amendment.

### (g)  Post-petition Interest on Claims

Unless expressly provided in the Plan, the Confirmation Order, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan or required by applicable law, post-petition interest shall not accrue on or after the Petition Date on account of any Claim.

### (h)  Unclaimed Distributions

Upon return of any plan distribution, Debtor shall issue letter correspondence to the last known address indicated on Debtor's schedules or applicable proof of claim. Debtor's correspondence shall include a check for the applicable CDP Payment and provide all necessary case information to enable Creditor's determination of the applicability of Debtor's plan payment. Any payments made pursuant to CDP that are unclaimed for a period of six (6) months shall be forfeited by the holder and will be re-deposited in the Disbursing Agent's account in accordance with 11 U.S.C. § 347(b).

### SECTION 7:  ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS.

The Bankruptcy Code gives the Debtor the power, subject to the approval of the Bankruptcy Court, to assume or reject executory contracts and unexpired leases. Rejection or assumption may be effected pursuant to a plan of reorganization.

Pursuant to §§ 365(a) and 1123(b)(2) of the Code, all Executory Contracts and unexpired leases between the Debtor and any Person, as set forth in the table below, shall be deemed assumed by the Reorganized Debtor as of the Effective Date, except for any Executory Contract or unexpired lease (i) which previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date or (ii) as to which a motion for approval of the assumption or rejection of such Executory Contract or unexpired lease has been filed and served prior to the Effective Date.

| Party to Executory Contract or Unexpired Lease | Description | Cure Payment(s) |
|---|---|---|
| Bermudez Medical Group LLC | Lease of non-residential real property located at 2601 Davie Blvd, Suite B, Fort Lauderdale, FL 33312 | $600.00 |

To the extent there are any executory contracts or leases rejected by the Debtor, ANY PROOF OF CLAIM FOR DAMAGES ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR LEASE MUST BE FILED WITH THE COURT WITHIN THIRTY DAYS AFTER THE ENTRY OF THE ORDER CONFIRMING THE PLAN.

**SECTION 8:  PROVISIONS FOR EXECUTION AND IMPLEMENTATION.**

Upon confirmation of the CDP, and in accordance with the Confirmation Order, the Debtor or Reorganized Debtor, as the case may be, will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the CDP. In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan.

### (a)  Funding

Upon the effective date of the Debtor's CDP, the equity interest holders shall remain equity shareholders in the newly reorganized Debtor.

In order to assist in funding the Debtor's business operations under the CDP, the Debtor may retain any cash on hand, funds in its bank accounts, and amounts received from accounts receivable to pay accounts payable.  Accordingly, Debtor asserts that it is able to perform all of its obligations under the CDP, and as such, the CDP satisfies § 1129(a)(11) of the Code.

### (b)  Effectiveness of Securities, Instruments and Agreements

On the Effective Date, all documents and agreements entered into or documents issued pursuant to the CDP and/or any agreement entered into or instrument or document issued in connection with any of the foregoing, as applicable, shall become effective and binding upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to become effective simultaneously.

### (c)  Approval of Agreements

Entry of the Confirmation Order shall constitute approval of the CDP documents and all such transactions, subject to the occurrence of the Effective Date.

### (d)  No Change of Control

Any acceleration, vesting or similar change of control rights of any Person or Entity in an arrangement with the Debtor that could otherwise be triggered by the entry of the Confirmation Order or the consummation of the CDP or any of the transactions contemplated thereby shall be deemed to be waived and of no force or effect.

### (e)  Administration After the Effective Date

After the Effective Date, the Reorganized Debtor may operate its business, and may use, acquire, and dispose of its property, free of any restrictions of the Code and Rules.

### (f)  Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Case under §§ 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### (g)  Revesting of Assets

Except as otherwise provided in the CDP, pursuant to § 1141 of the Code, the property of the Estate of the Debtor, shall revest in the Reorganized Debtor on the Effective Date, free and clear of all Liens, Claims and interests of holders of Claims and Equity Interests, except as otherwise provided in the CDP or the Confirmation Order.

### (h)  Discharge of Debtor

In accordance with § 1141 of the Code, the Debtor will receive a discharge of debt in this bankruptcy case.

### (i)  Injunction Related to Confirmation

Upon the Effective Date of the Plan, all Persons who have been, are or may be holders of Claims (including Late Filed Claims) against the Debtor, shall be enjoined from taking any actions against or affecting the Debtor, or the Reorganized Debtor, on account of such Claims or Equity Security Interest (other than actions brought to enforce any rights or obligations under the Plan), including without limitation:

1.  Against the filing, commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, with respect to any property of any of the foregoing or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing, or any property of any such transferee or success except as specifically authorized in the Plan;

2. Enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment award, decree or other Order against the Debtor, with respect to any property of any of the foregoing or any of the direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing, or any property of any such transferees or successor, except as specifically authorized in the Plan;

3. Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any liens or encumbrances against the Debtor, with respect to any property of any of the foregoing or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing, or any property of any such transferee or successor except as specifically authorized in the Plan;

4. Setting-off, seeking reimbursement or contribution from or subrogation against or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to the Debtor, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing except as specifically authorized in the Plan; or

5. Proceeding in any manner and any place with regard to liquidating any Claim in any forum other than United States Bankruptcy Court for the Southern District of Florida or, if that Court does not have jurisdiction thereon, in the United States District Court for the Southern District of Florida or in such forum deemed appropriate by the Debtor.

### (j)  Votes Solicited in Good Faith

The Debtor has, and upon confirmation of the CDP shall be deemed to have, solicited acceptances of the CDP in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and on account of such solicitation will not, be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

### (k)  Legal Proceedings

### (1)  Potential Bankruptcy Causes of Action

Except as otherwise provided expressly in Debtor's CDP, including, without limitation, subsection (b) below, or in any contract, instrument, release or other agreement entered into in connection with the Plan or by Order of the Court, in accordance with § 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce any claims, rights, and causes of action under §§ 544 through 550, inclusive, of the Bankruptcy Code or any other applicable law. Debtor may pursue any such claims, rights and causes of action in accordance with what it determines to be in its best interests. Debtor is not able to determine the viability of the potential causes of action set forth above at the current time, nor has the Debtor determined a

cost benefit analysis of said actions. As a result, Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

### (2)  Preservation of Claims and Causes of Action

Debtor shall retain the right to prepare, file, pursue, prosecute, and settle the causes of action, whether or not such causes of action have been asserted or commenced as of the Effective Date, as a representative of the estate pursuant to 11 U.S.C. § 1123(b)(3)(B).

To the extent that certain causes of action are filed by the Debtor, and are not resolved prior to the Effective Date, such causes of action will re-vest in the Debtor pursuant to the terms of the CDP.

### (l)  Notices

Any notice described in or required by the terms of this CDP or the Code and Rules shall be deemed to have been properly given when actually received or if mailed, five days after the day of mailing, if such shall have been sent by certified mail, return receipt requested, and if sent to:

| | |
|---|---|
| The Reorganized Debtor addressed to: | Patrice M. Torrence, DPM, LLC<br>330 NW 49th Ave<br>Plantation, FL 33317-2030 |
| With copies to: | Van Horn Law Group, P.A.<br>330 N. Andrews Avenue, Suite 450<br>Fort Lauderdale, Florida 33301 |
| and | Office of the U.S. Trustee<br>51 SW First Avenue, Room 1204<br>Miami, FL 33130 |

## SECTION 9:  CONFIRMATION AND EFFECTIVENESS OF CDP.

### (a)  Conditions Precedent to Confirmation

The CDP shall not be confirmed by the Court unless and until the following conditions shall have been satisfied or waived.

(i) The Confirmation Order shall be in form and substance reasonably acceptable to the Debtor and include, among other things, a finding of fact that the Debtor and the Reorganized Debtor, acted in good faith within the meaning of and with respect to all of the actions described in § 1125(e) of the Code and are, therefore, not liable for the violation of any applicable law, rule or regulation governing such actions; and

(ii) The Confirmation Order shall have been entered and shall be a Final Order (with no modification or amendment thereof), and there shall be no stay or injunction that would prevent the occurrence of the Effective Date;

(iii) The statutory fees owing to the United States Trustee shall have been paid in full; and

(iv) All other actions, authorizations, filings consents and regulatory approvals required (if any) shall have been obtained, effected or executed in a manner acceptable to the Debtor and remain in full force and effect or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

### (b)  Effect of Failure

If each condition to the Effective Date specified in the Plan has not been satisfied or duly waived within ninety (90) days after the Confirmation Date, then upon the filing of a motion by the Debtor made before the time that all conditions have been satisfied or duly waived, the Confirmation Order will be vacated by the Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated, the Plan shall be deemed null and void in all respects, including without limitation the discharge of Claims pursuant to § 1141 of the Code and the assumptions or rejections of executory contracts and unexpired leases as provided by the Plan, and nothing contained herein shall (l) constitute a waiver or release of any Action by, or Claims against, the Debtor or (2) prejudice in any manner the rights of the Debtor.

### (c)  Waiver of Conditions

The Debtor may waive one or more of the conditions precedent to confirmation of the Plan, or the condition precedent to effectiveness of the Plan set forth herein.  The Debtor may waive in writing one or more of the other conditions precedent to confirmation and effectiveness of the Plan, without further notice to parties in interest or the Court without a prior hearing.

## SECTION 10:  RETENTION OF JURISDICTION.

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, §§ 105(a) and 1142 of the Code and for, among other things, the following purposes:

A.    Determination of all issues and disputes regarding title to property of the estate, and determination of all causes of action, controversies, duties or conflicts, whether or not subject to litigation or proceedings pending as of the Confirmation date, between the Debtor and any other party, including but not limited to, any right of the Debtor to recover assets pursuant to the provisions of the Code and Rules.

B.    Fix allowances of compensation and reimbursement of expenses pursuant to § 330 of the Code.

C.      Correct any defect, cure any omission, or reconcile any inconsistency in this CDP or the Order of Confirmation as may be necessary or appropriate to carry out the purposes and intent of this CDP.

D.      Determine pending applications for the assumption or rejection of executory contracts and unexpired leases under § 365 of the Code and determine the allowance of Claims resulting therefrom.

E.      To consider any amendments or modifications to this CDP.

F.      To issue such orders as are necessary or appropriate to carry out the provisions of this CDP, including without limitation the appointment of a person pursuant to F.R.C.P. Rule 70 and Rule 7070 of the Rules to act, execute and deliver documents on behalf of the Debtor to implement and consummate this CDP.

G.      To enjoin the interference with the implementation and consummation of the CDP, and to impose sanctions for any such interferences.

H.      To liquidate damages in connection with any disputed, contingent or unliquidated claims.

I.      To hear and determine all controversies and disputes that may arise in connection with this Chapter 11 case and in connection with the interpretation and implementation of the CDP.

J.      To determine any and all applications, adversary proceedings or contested matters pending on the Confirmation Date and arising under Chapter 11 of the Code or arising in or related to the Debtor's reorganization case under Chapter 11 and Title 11 of the Code.

K.      For such other matters as may be set forth in the Order of Confirmation.

## SECTION 11:  TAX CONSEQUENCES OF CDP.

**Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult With Their Own Accountants, Attorneys, and/or Advisors.**

A summary description of certain United States federal tax consequences of the Plan is provided below.  The description of tax consequences below is for informational purposes only, and, due to lack of definitive judicial or administrative authority or interpretation, substantial uncertainties exist with respect to various U.S. federal income tax consequences of the Plan as discussed herein.  Only the potential material U.S. federal income tax consequences of the typical holder of claims and interest who are entitled to vote or to accept or reject the Plan are described below.  No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan, and no tax opinion is being given in the Disclosure Statement.  No rulings or determination of the Internal Revenue Service (the "IRS") or any other taxing authorities have been sought or obtained with respect to any tax consequences of the Plan, and

the discussion below is not binding upon the IRS or such other authorities.  No representations are being made regarding the particular tax consequences of the confirmation and consummation of the Plan to the Debtor or to any holder of claims or interests.  No assurances can be given that the IRS would not assert, or that a court would not sustain, a different position from any discussion herein.

The discussion of the U.S. federal income tax consequences below is based on the IRS Code of 1986, as amended (the "Tax Code"), Treasury Regulations promulgated and proposed there under, judicial authorities, and administrative rulings and pronouncements of the IRS and other applicable authorities, all as in effect on the date of this document.  Legislative, judicial, or administrative changes or interpretations enacted or promulgated in the future could alter or modify the analyses and conclusions set forth below.  It cannot be predicted at this time whether any tax legislation will be enacted, or, if enacted, whether any tax law changes contained therein would affect the tax consequences to holders of claims and interests (the "Claimants").  Any such changes or interpretations may be retroactive and could significantly affect the U.S. federal income tax consequences discussed below.

**THIS DISCUSSION DOES NOT ADDRESS FOREIGN, STATE OR LOCAL TAX CONSEQUENCES OF THE PLAN, NOR DOES IT PURPORT TO ADDRESS THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN TO SPECIAL CLASSES OF TAXPAYERS (SUCH AS FOREIGN ENTITIES, NONRESIDENT ALIEN INDIVIDUALS, PASS-THROUGH ENTITIES SUCH AS PARTNERSHIPS AND HOLDERS THROUGH SUCH PASS-THROUGH ENTITES, S CORPORATIONS, MUTUAL FUNDS, INSURANCE COMPANIES, FINANCIAL INSTITUTIONS, SMALL BUSINESS INVESTMENT COMPANIES, REGULATED INVESTMENT COMPANIES, CERTAIN SECURITIES TRADERS, BROKER-DEALERS AND TAX-EXEMPT ORGANIZATIONS).  FURTHERMORE, ESTATE AND GIFT TAX ISSUES ARE NOT ADDRESSED AND TAX CONSEQUENCES RELATING TO THE ALTERNATIVE MINIMUM TAX ARE GENERALLY NOT DISCUSSED.**

**NO REPRESENTATIONS ARE MADE REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE PLAN TO ANY HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT A TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTION DESCRIBED HEREIN AND IN THE PLAN.**

### (a)  *United States Federal Income Tax Consequences to the Debtor*

Generally, upon the discharge of a debt obligation owed by a debtor for an amount less than the "adjusted issue price" (in most cases, the amount the debtor received on incurring the obligation, with certain adjustments) gives rise to cancellation of indebtedness ("COD") incomes to the debtor, subject to certain rules and exceptions.  However, when the discharge of indebtedness occurs pursuant to a plan approved by the Bankruptcy Court, there is a special rule under the Tax Code that specifically excludes from a debtor's income the amount of such discharged indebtedness.  Instead, certain of the debtor's tax attributes otherwise available

generally must be reduced by the amount of the COD income that is excluded from the debtor's income, and the COD income passes through from the debtor to partners on Schedule K-1 (COD income will not be taxable to a partner if that partner is bankrupt or insolvent, to the extent of such insolvency).

### (b)  United States Federal Income Tax Consequences to Claimants

The United States federal income tax consequences to Claimants will depend on, among other things, (1) whether the Claim and the consideration received in respect thereof are "securities" for the United States federal income tax purposes, (2) the manner in which a holder acquired a Claim, (3) the length of time the Claim has been held, (4) whether the Claim was acquired at a discount, (5) whether the holder has taken a bad debt deduction with respect to the Claim (or any portion thereof) in the current or prior years, (6) whether the holder has previously included in its taxable income accrued but unpaid interest with respect to the claims, (7) the holder's method of tax accounting, and (8) whether the Claim is an installment obligation for United States federal income tax purposes.  Therefore, Claimants should consult their own tax advisors for information that may be relevant to their particular situations and circumstances and the particular tax consequences to them of the transactions contemplated by the Plan.

Claimants generally will not recognize gain, but may recognize loss, with respect to the amounts in which the Claimants receive on their claims that either exceeds or is less than the Claimant's basis in the claim.  Thus, it is possible that Claimants may recognize a gain or loss as a result of the distributions under the Plan.

In general, the gain or loss recognized by a Claimant is capital or ordinary in nature.  The character depends on the underlying nature of the claim and whether the claim is in the hands of the Claimant.  **Claimants should consult their own tax advisors for information that may be relevant to their particular situations and circumstances, and the particular tax consequences to them of the transactions contemplated by the Plan.**

### (c)  Information Reporting and Backup Withholding

Certain payments, including payments in respect of accrued interest or market discount, are generally subject to information reporting by the payor to the IRS.  Moreover, such reportable payments may be subject to backup withholding under certain circumstances.  Under the Tax Code's backup withholding rules, a United States holder may be subject to backup withholding at the applicable rate with respect to certain distributions or payments pursuant ot he Plan, unless the holder comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact or provides a correct United States taxpayer identification number and certifies under penalty of perjury that the holder is a U.S. person, the taxpayer identification number is correct and that the holder is not subject to backup withholding because of a failure to report all dividend and interest income.

Backup withholding is not an additional tax.  Amounts withheld under the backup withholding rules may be credited against a holder's United States federal income tax liability,

and a holder may obtain a refund of any excess amounts withheld under the backup withholding rules by filing an appropriate claim for refund with the IRS.

### SECTION 12:  MISCELLANEOUS PROVISIONS.

#### (a)  Effectuating Documents and Further Transactions.

The Debtor or Reorganized Debtor, as the case may be, is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the CDP.

#### (b)  Post-Effective Date Fees and Expenses

From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of Professionals thereafter incurred by the Reorganized Debtor, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

#### (c)  Amendment or Modification of Plan

Alterations, amendments or modifications of the CDP may be proposed in writing by the Debtor at any time prior to the Confirmation Date in conformity with § 1127(a) of the Code, provided that the CDP, as altered, amended or modified, satisfies the conditions of §§ 1122, 1123 and 1129 of the Code, and the Debtor shall have complied with § 1125 of the Code. The Plan may be altered, amended or modified by the Debtor at any time after the Confirmation Date in conformity with § 1127(b) of the Code, provided that the CDP, as altered, amended or modified, satisfies the requirements of §§ 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under § 1129 of the Code and the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.  Prior to the Effective Date, the Debtor, and without the approval of the Bankruptcy Court, and without notice to all holders of Claims and Interests, insofar as it does not materially adversely affect the interests of holders of Claims and Interests, may correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

#### (d)  Severability

In the event that the Court determines, prior to the Confirmation Date, that any provision in the CDP is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and

operative effect of any other provision of the CDP. The Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### (e)  Filing of Additional Documents

On or before Substantial Consummation of the Plan, the Debtor shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the CDP.

### (f)  No Admissions

Notwithstanding anything in the CDP to the contrary, nothing contained in the CDP shall be deemed as an admission by any Person with respect to any matter set forth in the CDP or herein.

### (g)  Substantial Consummation

The CDP shall be deemed to be substantially consummated under §§ 1101 and 1127(b) of the Code upon commencement of distributions under the Plan.

### (h)  Inconsistency

In the event of any inconsistency between the CDP and the Confirmation Order, the Confirmation Order shall govern.

### (i)  Remedy of Defects

After the Effective Date, the Reorganized Debtor may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan and in form and substance satisfactory to the Reorganized Debtor

## SECTION 13:  CONCLUSION.

The aforesaid provisions shall constitute the CDP of the Debtor. This CDP, when approved and confirmed by the Bankruptcy Court, shall be deemed binding on the Debtor, all creditors, and all parties in interest and their successors and assigns in accordance with 11 U.S.C. § 1141.

## APPENDIX A:  DEFINITIONS.

For the purpose of the CDP, the following terms shall have the respective meanings set forth below and such meanings shall be equally applicable to the singular and plural forms of the terms defined unless the context requires otherwise.

"Administrative Creditor" shall mean any creditor entitled to payment of an Administrative Expense Claim.

"Administrative Expense" shall mean any cost or expense of administration of this Estate allowed by the Court pursuant to § 503(b) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate and any actual and necessary expenses of operating the business of the Debtor.

"Allowed Amount" shall mean with respect to a Claim, (a) the amount of a Claim that was listed in the Debtor's Schedules (as originally filed in this Case) as not disputed, contingent or unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, or (b) if a holder of a Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to 3003(c)(3) of the Rules: (i) the amount stated in such proof of claim or in the Schedules if no objection to such proof of claim or amount listed in the Schedules has been interposed within the applicable period of limitation fixed by the Code or Rules, or as otherwise fixed by the Court, or (ii) such amount as shall be fixed by an order of the Court which has become a Final Order, if an objection has been interposed within the applicable period of limitation fixed by the Code, the Rules, or the Court, or (c) with respect to a Fee Request, such amount as shall be fixed by an order of the Court which has become a Final Order. In no event shall the Allowed Amount of any Priority Claim or Unsecured Claim include interest accrued on such Claim after the Filing Date.

"Allowed Claims" shall mean a claim (a) in respect of which a proof of claim has been filed with the Court within the applicable period of limitation fixed by Rule 3003 or (b) scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b), and which is not listed as disputed, contingent or unliquidated as to amount, and in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3003, or by order of the court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.  Allowed claim shall not include interest on the principal amount of such claim subsequent to the Petition Date, except as may be otherwise provided herein.

"Allowed Secured Claim" means an Allowed Claim secured by the Property in an amount equal to the lesser of the Allowed Claim of that creditor or the value of the Property, as determined by the Court pursuant to 11 U.S.C. § 506, minus the amount of any Allowed Claim secured by a senior lien against the same Property, unless the holder of the claim elects pursuant to § 1111(b) in which event the Allowed Secured Claim shall be equal to the Allowed Claim.

"Article" shall mean one of the numbered Articles of the Plan.

"Ballot" shall mean the ballot accompanying the CDP upon which holders of Claims and Equity Interests in each Impaired Class of Claims and Equity Interests that are entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan and, if applicable, such other elections as may be made thereon are to be indicated.

"Ballot Deadline" shall mean the last day established by order of the Court for filing a Ballot with the Clerk of the Court.

"Bankruptcy Code" means Title I of the Bankruptcy Reform Act of 1978, as Amended, 11 U.S.C. § 101, *et seq.*

"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Florida having jurisdiction over the Chapter 11 Case.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended, as applicable to cases pending before the Bankruptcy Court.

"Business Day" shall mean a day other than a Saturday, a Sunday, or a day on which commercial banks in Miami, Florida are authorized or required to close.

"Chapter 11" means Chapter 11 of the Bankruptcy Code.

"Claim" shall have the meaning as set forth in 11 U.S.C., § 101 and include any right to payment or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

"Class" shall mean a group of Claims or Equity Interests classified together.

"Confirmation Date" shall mean the date upon which the Order confirming the Plan is entered by the Court in accordance with the provisions of Chapter 11 of the Code.

"Confirmation Order" shall mean an Order entered by the Bankruptcy Court, District Court, or other appellate Court confirming this Plan.

"Consummation Date" shall mean the date on which the Confirmation Order becomes a Final Order.

"Court" shall mean the United States Bankruptcy Court for the Southern District of Florida, in which the Debtor's Chapter 11 case, pursuant to which this Plan is proposed, is pending, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

"Creditor" shall mean the holder of an allowed Claim.

"Effective Date" shall be the thirtieth (30th) day following the date upon which the Order is entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

"Equity Interest" shall mean any interest in the Debtor represented by membership interests.

"Final Order" shall mean an order or a judgment of the Court which has not been stayed and as to which order or judgment (or any revisions, modification or amendment thereof) the time to appeal or seek review or rehearing has expired.

"Impaired Claim" shall mean any class of creditors whose claims are impaired by payments as proposed in this Plan, in accordance with 11 U.S.C. § 1124.

"Person" or "Persons" shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof or other entity.

"Plan" or "Plan of Reorganization" or "Disclosure Statement" refers to this document, the Combined Disclosure Statement and Plan of Reorganization ("CDP").

"Priority Claim" shall mean any claim, other than administrative expense or a tax claim, to the extent entitled to priority in payment under 11 U.S.C. § 507(a).

"Priority Creditor" shall mean any creditor that is the holder of a priority claim.

"Priority Non-Tax Claim" shall mean any claim to the extent entitled to priority in payment under 11 U.S.C. §§ 507(a)(3), (4), (5), (6), or (7).

"Priority Tax Claim" shall mean any claim to the extent entitled to priority in payment under 11 U.S.C. § 507(a)(8).

"Pro Rata" shall mean proportionately, so that the ratio of the amount of consideration distributed to an account of a particular Allowed Claim or Equity Interest to the Allowed Amount of such Claim or Equity Interest is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims or Allowed Equity Interests of the Class in which the particular Claim or Equity Interest is included to the amount of all Allowed Claims or Equity Interests of that Class, unless otherwise defined in the Plan. Whenever a Disputed Unsecured Claim or Disputed Equity Interest has not been finally resolved, an appropriate reserve for payment of such Disputed Unsecured Claim or Disputed Equity Interest shall be established so that there will be sufficient consideration available to make a Pro Rata distribution to the holder of such Disputed Unsecured Claim or Disputed Equity Interest upon final resolution of the dispute.

"Professional Person" mean attorneys, accountants, appraisers or other professionals within the meaning of § 327 of the Bankruptcy Code, employed with the approval of the Bankruptcy Court.

"Rules" shall mean the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules as adopted by the Court.

"Secured Claim" means any Claim that is secured pursuant to § 506 of the Bankruptcy Code.

"Secured Creditor" means any Creditor that holds a Secured Claim.

"Tax Creditor" means any creditor that holds a tax claim.

"Unimpaired Claim" shall mean any class of creditors whose claim are not impaired under the Plan in accordance with 11 U.S.C. § 1124.

"Unsecured Claim" shall mean all claims other than administrative expense claims, secured claims, priority claims, and tax claims.

"Unsecured Creditor" means any creditor that is the holder of an unsecured claim.

Exhibit "A"

| Patrice Torrence, DPM, LLC: Projections (19-12804) | | | | | | |
|---|---|---|---|---|---|---|
| Years 2019 through 2025 | | | | | | |
| | | | | | | |
| | Projected Year | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
| | | | | | | |
| INCOME | Total Receipts | $310,000.00 | $311,550.00 | $313,107.75 | $314,673.29 | $316,246.66 |
| | | | | | | |
| DISBURSEMENTS | Advertising | $5,400.00 | $5,427.00 | $5,454.14 | $5,481.41 | $5,508.81 |
| | Bank Charges | $1,200.00 | $1,206.00 | $1,212.03 | $1,218.09 | $1,224.18 |
| | Contract Labor | $24,000.00 | $24,120.00 | $24,240.60 | $24,361.80 | $24,483.61 |
| | Insurance (Medical/Vision/Dental) | $22,500.00 | $22,612.50 | $22,725.56 | $22,839.19 | $22,953.39 |
| | Insurance (Auto) | $4,700.00 | $4,723.50 | $4,747.12 | $4,770.85 | $4,794.71 |
| | Insurance (General Liability) | $732.00 | $735.66 | $739.34 | $743.03 | $746.75 |
| | Insurance (Professional Liability) | $5,146.32 | $5,146.32 | $5,146.32 | $5,146.32 | $5,146.32 |
| | Leases (Storage) | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 |
| | Office Supplies | $6,000.00 | $6,030.00 | $6,060.15 | $6,090.45 | $6,120.90 |
| | Officer Salary | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 |
| | Payroll | $34,200.00 | $34,371.00 | $34,542.86 | $34,715.57 | $34,889.15 |
| | Professional Fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | Rent | $7,200.00 | $7,236.00 | $7,272.18 | $7,308.54 | $7,345.08 |
| | Repairs & Maitenance | $1,500.00 | $1,507.50 | $1,515.04 | $1,522.61 | $1,530.23 |
| | Taxes Paid - Payroll | $19,200.00 | $19,296.00 | $19,392.48 | $19,489.44 | $19,586.89 |
| | Telephone | $5,700.00 | $5,728.50 | $5,757.14 | $5,785.93 | $5,814.86 |
| | U.S. Trustee Quarterly Fees | $650.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | Utilities | $900.00 | $904.50 | $909.02 | $913.57 | $918.14 |
| | Vehicle Expenses | $22,000.00 | $22,000.00 | $22,000.00 | $22,000.00 | $22,000.00 |
| | | | | | | |
| | Gross Disbursements | $263,428.32 | $263,444.48 | $264,113.97 | $264,786.81 | $265,463.01 |
| | | | | | | |
| | Projected Net Income | $46,571.68 | $48,105.52 | $48,993.78 | $49,886.48 | $50,783.64 |
| | | | | | | |
| PLAN PAYMENT | Class 1 - Ocean Bank | $34,577.76 | $34,577.76 | $34,577.76 | $34,577.76 | $34,577.76 |
| | Class 2 - Fundation | $2,541.12 | $2,541.12 | $2,541.12 | $2,541.12 | $2,541.12 |
| | VHLG Legal Fees | $4,000.00 | $4,250.00 | $4,250.00 | $4,250.00 | $4,250.00 |
| | Class 3 - IRS | $2,769.84 | $2,769.84 | $2,769.84 | $2,769.84 | $923.28 |
| | Class 4 - GUC | $1,800.04 | $1,800.04 | $1,800.04 | $1,800.04 | $1,800.04 |
| | Total: | $45,688.76 | $45,938.76 | $45,938.76 | $45,938.76 | $44,092.20 |

Exhibit "A"

**Patrice Torrence, DPM, LLC: 5 Year Plan Payment Schedule (19-12804)**

| Class | Creditor Name | Payment Amount | Payment Duration | Payment Frequency | Total Plan Payment | Claim Type | Amount Claimed |
|---|---|---|---|---|---|---|---|
| 1 | Ocean Bank | $2,881.48 | 60 Months | Monthly | $172,889.00 | Secured | $149,046.07 |
| 2 | Fundation Group LLC | $211.76 | 60 Months | Monthly | $25,411.32 | Secured | $25,411.32 |
| 3 | Internal Revenue Service | $230.82 | 52 Months | Monthly | $12,003.00 | Priority | $10,545.99 |
| 4 | Internal Revenue Service | $3.95 | 20 Quarters | Quarterly | $79.08 | Unsecured | $790.84 |
| 4 | Bank of America | $36.64 | 20 Quarters | Quarterly | $732.71 | Unsecured | $7,327.07 |
| 4 | Brunt Sweeney Matz CPA | $12.25 | 20 Quarters | Quarterly | $245.00 | Unsecured | $2,450.00 |
| 4 | Chase Ink | $103.13 | 20 Quarters | Quarterly | $2,062.52 | Unsecured | $20,625.21 |
| 4 | DJO Global | $16.02 | 20 Quarters | Quarterly | $320.34 | Unsecured | $3,203.43 |
| 4 | Joe Motts & Associates | $16.50 | 20 Quarters | Quarterly | $330.00 | Unsecured | $3,300.00 |
| 4 | Regions Bank | $79.66 | 20 Quarters | Quarterly | $1,593.14 | Unsecured | $15,931.39 |
| 4 | Regions Bank | $181.88 | 20 Quarters | Quarterly | $3,637.50 | Unsecured | $36,375.00 |

Exhibit "B"

**Patrice Torrence, DPM, LLC: Liquidation Analysis (19-12804)**

## Source of Funds from Non-Exempt Assets[1]

| | | | |
|---|---|---|---|
| 1 | Cash in Bank Account | $7,232.24 | |
| 2 | Receivables | $45,000.00 | |
| | **ASSETS:** | | $52,232.24 |

## Less:

### Administrative Expenses

| | | | |
|---|---|---|---|
| 1 | Chapter 7 Trustee Fee | $6,250.00 [2] | |
| 2 | Chapter 7 Administrative Expense | $1,000.00 [3] | |
| 3 | Chapter 11 Administrative Expenses | | |
| | a.   Chapter 11 Debtor Professional Fees (estimated) | $21,000.00 | |
| | b.   US Trustee fees | $650.00 [4] | |
| | **EXPENSES:** | | $28,900.00 |

| | | | |
|---|---|---|---|
| | **TOTAL ASSETS:** | | $23,332.24 |
| 4 | Allowed Secured Claims | | |
| | a.   Ocean Bank | $149,046.07 | |
| | a.   Fundation Group LLC | $25,411.32 | |
| 5 | Allowed Priority Claims | | |
| | a.   Internal Revenue Service | $10,545.99 | |

| | |
|---|---|
| **TOTAL ALLOWED SECURED AND PRIORITY CLAIMS:** | $185,003.38 |
| **BALANCE:** | -$161,671.14 |
| Total dollar amount available to unsecured claims | $0.00 |
| Total dollar amount per Chapter 11 Plan | $12,840.01 |

Footnotes:

[1] The value of partially exempted assets = value minus applicable exemption.

[2] The Chapter 7 Trustee Fees are calculated in accordance with 11 U.S.C. §326, which provides: "In a case under Chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims."

[3] Chapter 7 Administrative Costs are difficult to quantify as they vary based on whether the Trustee employs professionals who could include attorneys, accountants, appraisers and liquidators. Therefore, the $1,000.00 value is arbitrary and for use in this analysis only.

[4] U.S. Trustee Fees are calculated in accordance with 28 U.S.C. §§1930(3) and (6), which provides: "for a case commenced under Chapter 11 of title 11 that does not concern a railroad, as defined in section 101 of title 11, $1,000… In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States Trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first. The fee shall be $325.00 for each quarter in which disbursements total less than $15,000; [and] $650 for each quarter in which disbursements total $15,000 or more but less than $75,000… The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed."

Exhibit "C"

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td>Debtor Name</td><td>Patrice M Torrence DPM LLC</td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>Southern District of Florida</td></tr>
<tr><td>Case number:</td><td>19-12804-JKO</td></tr>
</table>

☐ Check if this is an
   amended filing

## Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11  12/17

Month: __May 2019__

Date report filed: __06/17/2019__
MM / DD / YYYY

Line of business: __Podiatry__

NAISC code: __621391__

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party: Patrice M Torrence

Original signature of responsible party

Printed name of responsible party: Patrice M Torrence

### 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

**If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.**

| | | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☐ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☐ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☐ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☐ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☑ | ☐ | ☐ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |

**If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.**

| | | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☑ | ☐ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☐ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☐ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☐ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☐ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☐ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☐ | ☐ |

Debtor Name   Patrice M Torrence DPM LLC                       Case number   19-12804-JKO

17. Have you paid any bills you owed before you filed bankruptcy?   ☐   ☐   ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?   ☐   ☐   ☐

---

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

   This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

   $   6,602.82

20. **Total cash receipts**

   Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

   Report the total from *Exhibit C* here.

   $   28,471.00

21. **Total cash disbursements**

   Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

   Report the total from *Exhibit D* here.

   – $   27051.31

22. **Net cash flow**

   Subtract line 21 from line 20 and report the result here.
   This amount may be different from what you may have calculated as *net profit*.

   + $   1,420.00

23. **Cash on hand at the end of the month**

   Add line 22 + line 19. Report the result here.

   Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

   This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

   = $   8,022.82

---

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**

   $   12700

   *(Exhibit E)*

---

Debtor Name  Patrice M Torrence DPM LLC

Case number  19-12804-JKO

---

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**　$ ___44415.19___

　　　*(Exhibit F)*

---

## 5. Employees

26. What was the number of employees when the case was filed?　　2

27. What is the number of employees as of the date of this monthly report?　　2

---

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?　$ ___0___

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?　$ ___0___

30. How much have you paid this month in other professional fees?　$ ___0___

31. How much have you paid in total other professional fees since filing the case?　$ ___0___

---

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | *Column A*<br>**Projected**<br>Copy lines 35-37 from the previous month's report. | − | *Column B*<br>**Actual**<br>Copy lines 20-22 of this report. | = | *Column C*<br>**Difference**<br>Subtract Column B from Column A. |
|---|---|---|---|---|---|
| 32. **Cash receipts** | $ 28000 | − | $ 28,471.00 | = | $ -471.00 |
| 33. **Cash disbursements** | $ 27175 | − | $ 27051.31 | = | $ 123.69 |
| 34. **Net cash flow** | $ 825 | − | $ 1,420.00 | = | $ -595.00 |

35. Total projected cash receipts for the next month:　　$ ___28000___

36. Total projected cash disbursements for the next month:　　- $ ___27,175.00___

37. Total projected net cash flow for the next month:　　= $ ___825.00___

---

Debtor Name  Patrice M Torrence DPM LLC

Case number  19-12804-JKO

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑ 38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☐ 39.  Bank reconciliation reports for each account.

☐ 40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐ 41.  Budget, projection, or forecast reports.

☐ 42.  Project, job costing, or work-in-progress reports.

Exhibit A

Question 3:

No, all of my bills were not paid on time.  Rent for the storage unit remains past due.

Question 5:

Account ending in 6406 with Bank of America remains open due to incoming medical insurance payments.  All of the payments which were received by the Bank of America account have been withdrawn and deposited into the DIP account at Bank United.

Question 6:

Tax returns were not timely filed nor paid.  Currently in the process of retaining an accountant for preparation of quarterly tax returns as well as end of the year return.

Exhibit B

Question 10:

Bank of America account ending in 6406 remains open for the purposes of automatic deposits of payments from medical insurance companies.  To change bank account information takes from 45 – 60 days and doing so may halt payments, which could be detrimental to operation of the business.

Exhibit C

| | **BANK OF AMERICA** | | |
| --- | --- | --- | --- |

| Date | Description | | Amount |
| --- | --- | --- | --- |
| 5/1/2019 | FCSO, Inc | $ | 571.39 |
| 5/2/2019 | FCSO, Inc | $ | 183.86 |
| 5/3/2019 | AARP | $ | 28.37 |
| 5/6/2019 | FCSO, Inc | $ | 3,277.44 |
| 5/7/2019 | FCSO, Inc | $ | 3,345.81 |
| 5/7/2019 | United Healthcare | $ | 37.16 |
| 5/8/2019 | FCSO, Inc | $ | 322.26 |
| 5/9/2019 | FCSO, Inc | $ | 222.72 |
| 5/9/2019 | United Healthcare | $ | 109.60 |
| 5/9/2019 | AARP | $ | 75.21 |
| 5/10/2019 | FCSO, Inc | $ | 6,310.71 |
| 5/10/2019 | Palmetto GBA | $ | 214.84 |
| 5/10/2019 | AARP | $ | 4.24 |
| 5/13/2019 | FCSO, Inc | $ | 598.84 |
| 5/14/2019 | FCSO, Inc | $ | 661.35 |
| 5/15/2019 | FCSO, Inc | $ | 1,491.54 |
| 5/16/2019 | FCSO, Inc | $ | 484.92 |
| 5/16/2019 | AARP | $ | 69.41 |
| 5/16/2019 | Amazon | $ | 17.95 |
| 5/17/2019 | FCSO, Inc | $ | 731.13 |
| 5/17/2019 | UHC of FL | $ | 52.72 |
| 5/20/2019 | FCSO, Inc | $ | 548.86 |
| 5/21/2019 | FCSO, Inc | $ | 1,394.89 |
| 5/21/2019 | AARP | $ | 143.07 |
| 5/21/2019 | UHC of FL | $ | 0.29 |
| 5/21/2019 | UHC of FL | $ | 0.29 |
| 5/22/2019 | FCSO, Inc | $ | 1,097.93 |
| 5/23/2019 | FCSO, Inc | $ | 1,002.24 |
| 5/23/2019 | AARP | $ | 195.95 |
| 5/24/2019 | FCSO, Inc | $ | 4,010.53 |
| 5/28/2019 | FCSO, Inc | $ | 1,477.41 |
| 5/29/2019 | FCSO, Inc | $ | 687.93 |
| 5/29/2019 | UHC of FL | $ | 58.23 |
| 5/30/2019 | FCSO, Inc | $ | 706.68 |
| 5/31/2019 | FCSO, Inc | $ | 652.40 |
| 5/31/2019 | UHC of FL | $ | 22.07 |
| | Total: | $ | 30,810.24 |

## BANK UNITED

| Date | Description | | Amount |
|------|-------------|---|-------:|
| 5/10/2019 | Customer deposit | $ | 163.00 |
| 5/10/2019 | Customer deposit | $ | 14,176.93 |
| 5/17/2019 | Customer deposit | $ | 4,495.31 |
| 5/24/2019 | Customer deposit | $ | 8,362.81 |
| | Total: | $ | 27,198.05 |

Exhibit D

## BANK OF AMERICA

| Date | Payee | Purpose | Amount |
|------|-------|---------|--------|
| 5/3/2019 | Humana Inc | Vision / Dental Insurance | 78.57 |
| 5/6/2019 | Onstar | Navigation services | 38.24 |
| 5/7/2019 | Avmed, Inc | Health Insurance | 658.97 |
| 5/10/2019 | Counter Withdrawal | Transfer to Bank United DIP account | 13860.11 |
| 5/17/2019 | Counter Withdrawal | Transfer to Bank United DIP account | 4107.86 |
| 5/21/2019 | Principal CCA | Insurance | 250 |
| 5/24/2019 | Counter Withdrawal | Transfer to Bank United DIP account | 8094.06 |
| 5/31/2019 | Counter Withdrawal | Transfer to Bank United DIP account | 3474.27 |

### CHECKCARD ACTIVITY

| | | | |
|------|-------|---------|--------|
| 5/6/2019 | SXM Sirius | Radio/Navigation | 28.83 |
| 5/9/2019 | Amazon | Supplies | 17.95 |
| 5/9/2019 | Equifax | Credit services | 19.95 |
| 5/21/2019 | Myfax | fax service | 15 |
| 5/23/2019 | Microsoft | Monthly service | 9.99 |
| 5/24/2019 | Aynax | Invoice service | 25 |
| 5/28/2019 | Amazon | Prime Membership | 120.41 |
| 5/28/2019 | Amazon | Supplies | 7.91 |
| 5/30/2019 | Apl Itunes | Cloud storage fee | 0.99 |
| 5/30/2019 | Town of Surfside | parking fee | 1.14 |
| | | Total | 30809.25 |

## BANK UNITED

| | | | |
|------|-------|---------|--------|
| 5/1/2019 | Amazon | Supplies | 119.98 |
| 5/1/2019 | Amazon | Supplies | 32.98 |
| 5/1/2019 | Gill Podiatry | Supplies | 204.27 |
| 5/1/2019 | Shell Sevice Station | Gas for vehicle | 50 |

| Date | Payee | Description | Amount |
|---|---|---|---|
| 5/1/2019 | GMF Lease | Vehicle Lease Payment | 1290.57 |
| 5/2/2019 | Sir Speedy | Prescription Pad Printing | 67.41 |
| 5/2/2019 | Walmart.com | Supplies | 31.43 |
| 5/3/2019 | Shell Sevice Station | Gas for vehicle | 55.38 |
| 5/3/2019 | Patrice Torrence | Officer Salary | 500 |
| 5/6/2019 | Shell Sevice Station | Gas for vehicle | 54.78 |
| 5/6/2019 | Kirina Potashnik | Advertising/Marketing | 450 |
| 5/6/2019 | Gina Antunez | Billing Services | 1098.93 |
| 5/7/2019 | ATM Withdrawal | Withdrawn by mistake-re deposited 5/10/19 | 160 |
| 5/7/2019 | ATM Withdrawal | Withdrawn by mistake-re deposited 5/10/19 | 3 |
| 5/9/2019 | Sunpass | Tolls | 25 |
| 5/9/2019 | Kevin Torrence | Payroll | 1132.86 |
| 5/10/2019 | Ocean Bank | Loan Repayment (Cashier's Check) | 2100 |
| 5/10/2019 | Patrice Torrence | Officer Salary | 3000 |
| 5/13/2019 | Firestone | Auto Repair | 1487.56 |
| 5/13/2019 | Dollar Tree | Supplies | 20.84 |
| 5/13/2019 | Multispace Parking Meter | Parking fee | 1.5 |
| 5/13/2019 | Racetrac | Gas for vehicle | 62.29 |
| 5/14/2019 | Vitality Medical | Supplies | 95.46 |
| 5/14/2019 | Bermudez Medical Group | Office Sublease | 600 |
| 5/14/2019 | Aetna Sm Grp | Health Insurance | 1069.28 |
| 5/15/2019 | Sunshine | Gas for vehicle | 61.81 |
| 5/16/2019 | ICS Software | Software Monthly Service | 599 |
| 5/17/2019 | Ocean Bank | Loan Repayment (Cashier's Check) | 2166.17 |
| 5/17/2019 | Bankers Insurance | General Liability Ins Premium | 61 |
| 5/20/2019 | Wawa | Gas for vehicle | 57.23 |
| 5/20/2019 | Gina Antunez | Billing Services | 1103.85 |
| 5/20/2019 | Kevin Torrence | Payroll | 1132.86 |
| 5/22/2019 | Comcast | Phone/Internet | 241.96 |
| 5/23/2019 | National Background | Background Screening - Medicaid | 94 |
| 5/23/2019 | Publix | Stamps | 11 |
| 5/23/2019 | Patrice Torrence | Officer Salary | 3000 |
| 5/24/2019 | Racetrac | Gas for vehicle | 40.28 |
| 5/28/2019 | AT&T | Mobile Phone Service | 291.45 |
| 5/28/2019 | PICA | Professional Liability | 1380.37 |

| Date | | Description | Amount |
|------|------|------|------|
| | Kirina Potashnik | | |
| 5/28/2019 | 7-Eleven | Advertising/Marketing | 450 |
| 5/29/2019 | GMF Lease | Gas for vehicle | 54.09 |
| 5/29/2019 | Sunpass | Vehicle Lease Payment | 1290.57 |
| 5/30/2019 | MB Parking | Tolls | 25 |
| 5/30/2019 | MB Parking | Parking fee | 3.35 |
| 5/30/2019 | | Parking fee | 0.85 |
| | | Total: | 25778.36 |

Exhibit E

| Date | Debt (Amount) | | Purpose | Due Date |
|------|------|------|---------|----------|
| 1/31/2019 | $ | 10,400.00 | IRS / payroll taxes | immediately |
| 4/30/2019 | $ | 2,300.00 | IRS / payroll taxes | immediately |

# Claims Never Sent Ledger Report Run 06-13-2019

| DONE | DT_SV | CLM TY | BILLED TO | PATIENT | * CHART | DESCRIPTION | AMOUNT |
|---|---|---|---|---|---|---|---|

Range = 01/01/19 - 05/31/19 Page: 1

| DONE | DT_SV | CLM | TY | BILLED TO | PATIENT | * | CHART | DESCRIPTION | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 03/06/19 | 03/04/19 | 10690 | N | MEDICARE PART B | Abuin, Francisca | *** | 000009 | DOMICIL/REST | 162.87 |
| 05/07/19 | 05/06/19 | 11135 | N | MEDICARE PART B | Abuin, Francisca | * | 000009 | DOMICIL/REST | 162.87 |
| 05/03/19 | 05/02/19 | 11114 | N | MEDICARE PART B | Aginsky, Yuli | * | 000027 | HOME VISIT EST | 150.51 |
| 02/23/19 | 02/21/19 | 10605 | N | MEDICARE PART B | Allen, Isabella | *** | 000048 | HOME VISIT EST | 97.76 |
| 05/03/19 | 05/02/19 | 11108 | N | MEDICARE PART B | Allen, Isabella | * | 000048 | HOME VISIT EST | 150.51 |
| 02/06/19 | 02/05/19 | 10459 | N | MEDICARE PART B | Alonso, Esther | **** | 002987 | DOMICIL/REST | 110.12 |
| 04/17/19 | 04/16/19 | 10980 | N | MEDICARE PART B | Alonso, Esther | * | 002987 | DOMICIL/REST | 162.87 |
| 05/02/19 | 05/01/19 | 11096 | N | MEDICARE PART B | Aponte-cruz, Carmen | * | 000086 | HOME VISIT EST | 150.51 |
| 06/07/19 | 05/09/19 | 11403 | N | MEDICARE PART B | Arias, Migdalia | * | 003240 | HOME VISIT EST | 150.51 |
| 02/14/19 | 02/12/19 | 10542 | N | MEDICARE PART B | Bagishan, Anisa | **** | 000120 | HOME VISIT EST. | 149.91 |
| 04/06/19 | 04/04/19 | 10866 | N | MEDICARE PART B | Bagishan, Anisa | ** | 000120 | HOME VISIT EST. | 149.91 |
| 05/15/19 | 05/14/19 | 11215 | N | MEDICARE PART B | Bagishan, Anisa | | 000120 | HOME VISIT EST | 150.51 |
| 03/27/19 | 03/25/19 | 10788 | N | MEDICARE PART B | Barone, Francesca | ** | 003197 | HOME VISIT-NEW PT- L | 204.39 |
| 04/23/19 | 03/12/19 | 10747 | N | MEDICARE PART B | Barquin, Mirtha | *** | 000144 | HOME VISIT EST | 150.51 |
| 05/15/19 | 05/14/19 | 11212 | N | MEDICARE PART B | Barquin, Mirtha | | 000144 | HOME VISIT EST | 227.43 |
| 05/10/19 | 02/18/19 | 10577 | N | MEDICARE PART B | Barreto, Jose | *** | 002829 | HOME VISIT EST. | 202.66 |
| 05/10/19 | 04/22/19 | 11016 | N | MEDICARE PART B | Barreto, Jose | * | 002829 | HOME VISIT EST | 150.51 |
| 02/13/19 | 02/11/19 | 10527 | N | MEDICARE PART B | Batyreva, Anna | **** | 000157 | HOME VISIT EST | 227.43 |
| 02/14/19 | 02/12/19 | 10540 | N | MEDICARE PART B | Bianculli, Gary | **** | 000392 | HOME VISIT EST | 150.51 |
| 04/24/19 | 04/23/19 | 11026 | N | MEDICARE PART B | Bianculli, Gary | * | 000392 | HOME VISIT EST | 150.51 |
| 02/14/19 | 02/12/19 | 10538 | N | MEDICARE PART B | Bommarito, Concetta | **** | 000811 | HOME VISIT EST | 150.51 |
| 04/24/19 | 04/23/19 | 11024 | N | MEDICARE PART B | Bommarito, Concetta | * | 000811 | HOME VISIT EST | 150.51 |
| 02/14/19 | 02/12/19 | 10537 | N | MEDICARE PART B | Bommarito, Diego | **** | 000827 | HOME VISIT EST. | 202.66 |
| 04/24/19 | 04/23/19 | 11023 | N | MEDICARE PART B | Bommarito, Diego | * | 000827 | HOME VISIT EST | 150.51 |
| 03/30/19 | 03/28/19 | 10822 | N | MEDICARE PART B | Borrego Perez, Matil | ** | 003207 | HOME VISIT EST | 97.76 |
| 03/08/19 | 03/06/19 | 10709 | N | MEDICARE PART B | Botvinnikov, Sofia | *** | 000951 | HOME VISIT EST | 150.51 |
| 05/16/19 | 05/15/19 | 11224 | N | MEDICARE PART B | Botvinnikov, Sofia | | 000951 | HOME VISIT EST | 150.51 |
| 03/13/19 | 03/11/19 | 10736 | N | MEDICARE PART B | Bourbeau, Ramona | *** | 003110 | HOME VISIT EST | 150.51 |
| 05/14/19 | 05/13/19 | 11195 | N | MEDICARE PART B | Bourbeau, Ramona | * | 003110 | HOME VISIT EST | 150.51 |
| 01/25/19 | 01/23/19 | 10347 | N | MEDICARE PART B | Budhoo, Joyce | **** | 000523 | HOME VISIT EST | 150.51 |
| 03/29/19 | 03/27/19 | 10812 | N | MEDICARE PART B | Budhoo, Joyce | ** | 000523 | HOME VISIT EST | 150.51 |
| 05/30/19 | 05/29/19 | 11311 | N | MEDICARE PART B | Budhoo, Joyce | | 000523 | HOME VISIT EST | 150.51 |
| 02/28/19 | 02/26/19 | 10645 | N | MEDICARE PART B | Bush, Gladys | *** | 000807 | HOME VISIT EST | 150.51 |
| 05/10/19 | 05/09/19 | 11189 | N | MEDICARE PART B | Bush, Gladys | * | 000807 | HOME VISIT EST | 150.51 |
| 04/11/19 | 02/05/19 | 10466 | N | MEDICARE PART B | Caminiti, Barbara | **** | 001097 | DOMICIL/REST | 162.87 |
| 04/10/19 | 04/09/19 | 10908 | N | MEDICARE PART B | Caminiti, Barbara | ** | 001097 | DOMICIL/REST | 162.87 |
| 05/09/19 | 05/08/19 | 11178 | N | MEDICARE PART B | Canqui, Ismelia | * | 001186 | HOME VISIT EST | 150.51 |
| 02/02/19 | 01/31/19 | 10423 | N | MEDICARE PART B | Canut Cruz, Ofelia | **** | 002906 | HOME VISIT EST | 150.51 |
| 03/21/19 | 03/15/19 | 10774 | N | MEDICARE PART B | CAPESTANY, FLORENCIA | | 003182 | HOME VISIT-NEW PT- L | 277.60 |
| 06/01/19 | 05/31/19 | 11340 | N | MEDICARE PART B | CAPESTANY, FLORENCIA | | 003182 | HOME VISIT EST | 150.51 |
| 02/25/19 | 02/22/19 | 10615 | N | MEDICARE PART B | Castillo, Ana | *** | 001547 | HOME VISIT EST. | 202.66 |
| 05/28/19 | 05/24/19 | 11289 | N | MEDICARE PART B | Castillo, Ana | | 001547 | HOME VISIT EST | 223.72 |
| 05/30/19 | 05/29/19 | 11310 | N | MEDICARE PART B | Chao, Helen | | 000540 | HOME VISIT EST | 135.94 |
| 04/10/19 | 04/09/19 | 10900 | N | MEDICARE PART B | Chong-you, Eunice | ** | 000764 | HOME VISIT EST | 150.51 |
| 04/02/19 | 03/29/19 | 10825 | N | MEDICARE PART B | Collazo, Gloria | ** | 003118 | HOME VISIT EST | 150.51 |
| 02/01/19 | 01/30/19 | 10418 | N | MEDICARE PART B | Colman, Paul | **** | 001383 | HOME VISIT EST | 150.51 |
| 05/16/19 | 05/15/19 | 11232 | N | MEDICARE PART B | Colman, Paul | | 001383 | HOME VISIT EST | 150.51 |
| 02/06/19 | 02/04/19 | 10446 | N | MEDICARE PART B | Conde, Roberto | **** | 001463 | HOME VISIT EST | 150.51 |
| 04/09/19 | 04/08/19 | 10892 | N | MEDICARE PART B | Conde, Roberto | ** | 001463 | HOME VISIT EST | 150.51 |
| 02/08/19 | 02/06/19 | 10483 | N | MEDICARE PART B | Conley, Kenneth | **** | 001489 | HOME VISIT EST | 150.51 |
| 04/18/19 | 04/17/19 | 10987 | N | MEDICARE PART B | Conley, Kenneth | * | 001489 | HOME VISIT EST | 214.75 |
| 01/25/19 | 01/22/19 | 10336 | N | MEDICARE PART B | Cooper, Annie | **** | 001573 | HOME VISIT EST | 227.43 |
| 03/06/19 | 03/04/19 | 10693 | N | MEDICARE PART B | Cordero Martinez, Jo | *** | 002985 | DOMICIL/REST | 162.87 |
| 05/07/19 | 05/06/19 | 11134 | N | MEDICARE PART B | Cordero Martinez, Jo | * | 002985 | DOMICIL/REST | 162.87 |
| 03/05/19 | 02/28/19 | 10660 | N | MEDICARE PART B | Craig, Jermel | *** | 003145 | HOME VISIT EST | 97.76 |
| 02/25/19 | 02/22/19 | 10621 | N | MEDICARE PART B | Dale, Mary | *** | 000798 | HOME VISIT EST | 214.77 |
| 05/06/19 | 05/03/19 | 11116 | N | MEDICARE PART B | Dale, Mary | * | 000798 | HOME VISIT EST | 150.51 |
| 02/11/19 | 02/08/19 | 10512 | N | MEDICARE PART B | Dellis, Mary | **** | 001607 | HOME VISIT EST | 150.51 |
| 04/14/19 | 04/12/19 | 10946 | N | MEDICARE PART B | Dellis, Mary | ** | 001607 | HOME VISIT EST | 150.51 |
| 02/16/19 | 02/14/19 | 10551 | N | MEDICARE PART B | Delllano, Jose | *** | 003125 | HOME VISIT EST | 150.51 |
| 04/12/19 | 04/11/19 | 10931 | N | MEDICARE PART B | Delllano, Jose | ** | 003125 | HOME VISIT EST | 97.76 |
| 04/12/19 | 01/29/19 | 10925 | N | MEDICARE PART B | Dixon, Diane | **** | 003161 | HOME VISIT - SUBSEQU | 145.72 |
| 04/12/19 | 04/09/19 | 10926 | N | MEDICARE PART B | Dixon, Diane | ** | 003161 | HOME VISIT EST | 150.51 |
| 03/09/19 | 03/07/19 | 10729 | N | MEDICARE PART B | Dosik, Zonia | *** | 000891 | HOME VISIT EST | 150.51 |
| 05/31/19 | 05/30/19 | 11334 | N | MEDICARE PART B | Dosik, Zonia | | 000891 | HOME VISIT EST | 150.51 |

Selected 2 companies. (Insurance Only) PATRICE TORRENCE, DPM

# Claims Never Sent Ledger Report Run 06-13-2019

| DONE | DT_SV | CLM | TY | BILLED TO | PATIENT | * CHART | DESCRIPTION | AMOUNT |
|------|-------|-----|-----|-----------|---------|---------|-------------|--------|
| | | | | | | Range = 01/01/19 - 05/31/19 Page: 2 | | |
| 06/10/19 | 03/29/19 | 10827 | N | MEDICARE PART B | Drel, Ada | ** 000965 | HOME VISIT EST | 150.51 |
| 03/09/19 | 03/07/19 | 10726 | N | MEDICARE PART B | Encarnacion, Miguel | *** 003073 | HOME VISIT EST | 135.94 |
| 05/17/19 | 05/16/19 | 11239 | N | MEDICARE PART B | Encarnacion, Miguel | 003073 | HOME VISIT EST | 135.94 |
| 02/06/19 | 02/05/19 | 10454 | N | MEDICARE PART B | Eyzaguirre, Liliana | **** 000626 | HOME VISIT EST | 97.76 |
| 04/26/19 | 04/25/19 | 11040 | N | MEDICARE PART B | Eyzaguirre, Liliana | * 000626 | HOME VISIT EST | 150.51 |
| 03/09/19 | 03/07/19 | 10730 | N | MEDICARE PART B | Fainzilberg, Liza | *** 000667 | HOME VISIT EST | 97.76 |
| 02/28/19 | 02/26/19 | 10639 | N | MEDICARE PART B | Feldman, Elliott | *** 001022 | HOME VISIT EST | 227.43 |
| 05/08/19 | 05/07/19 | 11146 | N | MEDICARE PART B | Feldman, Elliott | * 001022 | HOME VISIT EST | 214.75 |
| 03/06/19 | 03/04/19 | 10694 | N | MEDICARE PART B | Fernandez, Nelsa | *** 001172 | DOMICIL/REST | 162.87 |
| 05/07/19 | 05/06/19 | 11132 | N | MEDICARE PART B | Fernandez, Nelsa | * 001172 | DOMICIL/REST | 110.12 |
| 02/23/19 | 02/21/19 | 10603 | N | MEDICARE PART B | Fernandez-Fondeur, J | *** 001234 | HOME VISIT EST | 150.51 |
| 05/03/19 | 05/02/19 | 11104 | N | MEDICARE PART B | Fernandez-Fondeur, J | * 001234 | HOME VISIT EST | 223.72 |
| 02/06/19 | 02/05/19 | 10460 | N | MEDICARE PART B | Ferrans, Ana | **** 002988 | DOMICIL/REST | 110.12 |
| 05/28/19 | 05/24/19 | 11292 | N | MEDICARE PART B | FOMON, SHIRLEY | 003246 | HOME VISIT - SUBSEQU | 145.72 |
| 04/03/19 | 04/01/19 | 10840 | N | MEDICARE PART B | Francis, Nancy | ** 003210 | DOMICIL/REST | 214.05 |
| 05/31/19 | 05/30/19 | 11323 | N | MEDICARE PART B | Francis, Nancy | 003210 | DOMICIL/REST | 110.12 |
| 03/14/19 | 03/12/19 | 10756 | N | MEDICARE PART B | Galperin, Eva | *** 001585 | HOME VISIT EST | 150.51 |
| 05/08/19 | 05/07/19 | 11164 | N | MEDICARE PART B | Galperin, Eva | * 001585 | HOME VISIT EST | 97.76 |
| 05/31/19 | 05/30/19 | 11331 | N | MEDICARE PART B | Galperin, Eva | 001585 | HOME VISIT EST | 223.72 |
| 06/01/19 | 05/31/19 | 11343 | N | MEDICARE PART B | GENTES, ROBERT | 003241 | HOME VISIT - SUBSEQU | 145.72 |
| 06/01/19 | 05/31/19 | 11342 | N | MEDICARE PART B | GENTES, ROBERTA | 003236 | HOME VISIT - SUBSEQU | 145.72 |
| 02/14/19 | 02/12/19 | 10536 | N | MEDICARE PART B | Giampocaro, Giusppa | **** 002977 | HOME VISIT EST | 150.51 |
| 04/24/19 | 04/23/19 | 11022 | N | MEDICARE PART B | Giampocaro, Giusppa | * 002977 | HOME VISIT EST | 150.51 |
| 03/21/19 | 03/15/19 | 10772 | N | MEDICARE PART B | Gil, Antonio | ** 003186 | HOME VISIT - SUBSEQU | 145.72 |
| 05/16/19 | 05/15/19 | 11230 | N | MEDICARE PART B | Gil, Antonio | 003186 | HOME VISIT EST | 150.51 |
| 05/03/19 | 05/02/19 | 11111 | N | MEDICARE PART B | GODOY, REINA | * 003223 | HOME VISIT - SUBSEQU | 218.93 |
| 02/26/19 | 02/25/19 | 10630 | N | MEDICARE PART B | Golphin, Richard | *** 002848 | HOME VISIT EST | 150.51 |
| 04/30/19 | 04/29/19 | 11071 | N | MEDICARE PART B | Golphin, Richard | * 002848 | HOME VISIT EST | 150.51 |
| 03/01/19 | 02/27/19 | 10656 | N | MEDICARE PART B | Gonzalez, Miriam | *** 001302 | HOME VISIT EST. | 202.66 |
| 05/09/19 | 05/08/19 | 11182 | N | MEDICARE PART B | Gonzalez, Miriam | * 001302 | HOME VISIT EST | 150.51 |
| 02/20/19 | 02/19/19 | 10586 | N | MEDICARE PART B | Guimoye, Rosa | *** 000349 | HOME VISIT EST | 150.51 |
| 05/01/19 | 04/30/19 | 11089 | N | MEDICARE PART B | Guimoye, Rosa | * 000349 | HOME VISIT EST | 150.51 |
| 01/17/19 | 01/15/19 | 10292 | N | MEDICARE PART B | Gutierrez, Isabel | **** 000428 | DOMICIL/REST | 162.87 |
| 05/07/19 | 05/06/19 | 11129 | N | MEDICARE PART B | Gutierrez, Isabel | * 000428 | DOMICIL/REST | 162.87 |
| 05/31/19 | 05/30/19 | 11320 | N | MEDICARE PART B | Hernandez, Luis | 003251 | HOME VISIT-NEW PT- L | 204.39 |
| 02/06/19 | 02/04/19 | 10448 | N | MEDICARE PART B | Isaac, Waida | **** 001286 | HOME VISIT EST | 150.51 |
| 04/09/19 | 04/08/19 | 10893 | N | MEDICARE PART B | Isaac, Waida | ** 001286 | HOME VISIT EST | 150.51 |
| 02/06/19 | 02/04/19 | 10450 | N | MEDICARE PART B | JEAN-PIERRE, CELANS | * 003151 | HOME VISIT - SUBSEQU | 145.72 |
| 04/09/19 | 04/08/19 | 10895 | N | MEDICARE PART B | JEAN-PIERRE, CELANS | 003151 | HOME VISIT EST | 150.51 |
| 05/14/19 | 05/13/19 | 11207 | N | MEDICARE PART B | Johnson, William | * 003216 | HOME VISIT EST | 97.76 |
| 05/24/19 | 05/22/19 | 11268 | N | MEDICARE PART B | Johnson, William | 003216 | HOME VISIT EST | 97.76 |
| 03/06/19 | 03/04/19 | 10680 | N | MEDICARE PART B | Joseph, Dieugrand | *** 000973 | HOME VISIT EST | 150.51 |
| 05/07/19 | 05/06/19 | 11122 | N | MEDICARE PART B | Joseph, Dieugrand | * 000973 | HOME VISIT EST | 150.51 |
| 03/14/19 | 03/12/19 | 10752 | N | MEDICARE PART B | Joseph, Hedy | *** 001009 | DOMICIL/REST | 162.87 |
| 05/15/19 | 05/14/19 | 11221 | N | MEDICARE PART B | Joseph, Hedy | 001009 | DOMICIL/REST | 162.87 |
| 05/08/19 | 05/07/19 | 11161 | N | MEDICARE PART B | Kayzerman, Ida | * 001483 | HOME VISIT EST | 223.72 |
| 02/02/19 | 01/31/19 | 10428 | N | MEDICARE PART B | Kolosov, Alexander | **** 003165 | HOME VISIT - SUBSEQU | 145.72 |
| 05/08/19 | 05/07/19 | 11148 | N | MEDICARE PART B | Kolosov, Alexander | * 003165 | HOME VISIT EST | 150.51 |
| 02/02/19 | 01/31/19 | 10427 | N | MEDICARE PART B | Kolosova, Inna | **** 000577 | HOME VISIT EST. | 202.66 |
| 05/08/19 | 05/07/19 | 11147 | N | MEDICARE PART B | Kolosova, Inna | * 000577 | HOME VISIT EST | 150.51 |
| 01/17/19 | 01/15/19 | 10294 | N | MEDICARE PART B | Lang, Maria | **** 001546 | DOMICIL/REST | 162.87 |
| 05/07/19 | 05/06/19 | 11131 | N | MEDICARE PART B | Lang, Maria | * 001546 | DOMICIL/REST | 110.12 |
| 05/31/19 | 05/30/19 | 11330 | N | MEDICARE PART B | Lavrov, Borislav | 000356 | HOME VISIT EST | 150.51 |
| 03/13/19 | 03/13/19 | 10737 | N | MEDICARE PART B | Lawrence, Marilyn | *** 000383 | HOME VISIT EST | 150.51 |
| 05/14/19 | 05/13/19 | 11196 | N | MEDICARE PART B | Lawrence, Marilyn | * 000383 | HOME VISIT EST. | 202.66 |
| 01/25/19 | 01/18/19 | 10328 | N | MEDICARE PART B | LAZARUS, LILLIAN | **** 003150 | HOME VISIT - SUBSEQU | 145.72 |
| 04/25/19 | 04/24/19 | 11032 | N | MEDICARE PART B | LAZARUS, LILLIAN | * 003150 | HOME VISIT EST | 150.51 |
| 02/06/19 | 02/05/19 | 10456 | N | MEDICARE PART B | Leal, Dionisia | **** 002858 | DOMICIL/REST | 110.12 |
| 04/17/19 | 04/16/19 | 10973 | N | MEDICARE PART B | Leal, Dionisia | * 002858 | DOMICIL/REST | 162.87 |
| 02/08/19 | 02/06/19 | 10472 | N | MEDICARE PART B | Leon, Helena | **** 003027 | HOME VISIT EST | 223.72 |
| 02/28/19 | 02/27/19 | 10646 | N | MEDICARE PART B | Leon, Helena | *** 003027 | HOME VISIT EST | 236.43 |
| 04/22/19 | 04/19/19 | 10998 | N | MEDICARE PART B | Leon, Helena | * 003027 | HOME VISIT EST | 150.51 |
| 05/09/19 | 05/08/19 | 11181 | N | MEDICARE PART B | Lopez, Fabiola | * 001608 | HOME VISIT EST | 150.51 |
| 02/02/19 | 01/31/19 | 10422 | N | MEDICARE PART B | Lopez, Teresa | **** 002875 | HOME VISIT EST | 349.68 |
| 04/12/19 | 04/11/19 | 10933 | N | MEDICARE PART B | Lopez, Teresa | ** 002875 | HOME VISIT EST | 97.76 |

Selected 2 companies. (Insurance Only) PATRICE TORRENCE, DPM

# Claims Never Sent Ledger Report Run 06-13-2019

| DONE | DT_SV | CLM | TY | BILLED TO | PATIENT | * CHART | DESCRIPTION | AMOUNT |
|---|---|---|---|---|---|---|---|---|

Range = 01/01/19 - 05/31/19 Page: 3

| DONE | DT_SV | CLM | TY | BILLED TO | PATIENT | * | CHART | DESCRIPTION | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 02/02/19 | 01/31/19 | 10421 | N | MEDICARE PART B | Machado, Gudelia | **** | 002873 | HOME VISIT EST | 150.51 |
| 04/12/19 | 04/11/19 | 10932 | N | MEDICARE PART B | Machado, Gudelia | ** | 002873 | HOME VISIT EST | 150.51 |
| 02/06/19 | 02/04/19 | 10444 | N | MEDICARE PART B | Machado, Irsa | **** | 000777 | HOME VISIT EST | 227.43 |
| 04/09/19 | 02/18/19 | 10889 | N | MEDICARE PART B | Machado, Irsa | *** | 000777 | HOME VISIT, ESTBLISH | 190.24 |
| 02/06/19 | 02/04/19 | 10443 | N | MEDICARE PART B | MACKO, STEVEN | **** | 003155 | HOME VISIT - SUBSEQU | 145.72 |
| 04/09/19 | 04/08/19 | 10887 | N | MEDICARE PART B | MACKO, STEVEN | ** | 003155 | HOME VISIT EST | 150.51 |
| 01/19/19 | 01/16/19 | 10295 | N | MEDICARE PART B | Mantilla, Walkiria | **** | 001251 | HOME VISIT EST | 150.51 |
| 04/05/19 | 04/03/19 | 10851 | N | MEDICARE PART B | Mantilla, Walkiria | ** | 001251 | HOME VISIT EST | 150.51 |
| 03/06/19 | 03/04/19 | 10686 | N | MEDICARE PART B | Martinez, Ada | *** | 003115 | DOMICIL/REST | 162.87 |
| 05/07/19 | 05/06/19 | 11137 | N | MEDICARE PART B | Martinez, Ada | * | 003115 | DOMICIL/REST | 162.87 |
| 03/08/19 | 03/06/19 | 10708 | N | MEDICARE PART B | Martinez, Fabio | *** | 002839 | HOME VISIT EST | 150.51 |
| 05/16/19 | 05/15/19 | 11223 | N | MEDICARE PART B | Martinez, Fabio | | 002839 | HOME VISIT EST | 150.51 |
| 02/06/19 | 02/04/19 | 10447 | N | MEDICARE PART B | Martinez, Gladys | **** | 001591 | HOME VISIT EST | 150.51 |
| 04/09/19 | 04/08/19 | 10891 | N | MEDICARE PART B | Martinez, Gladys | ** | 001591 | HOME VISIT EST | 150.51 |
| 02/01/19 | 01/30/19 | 10416 | N | MEDICARE PART B | Masin, Shirley | **** | 002746 | HOME VISIT EST | 150.51 |
| 04/11/19 | 04/10/19 | 10920 | N | MEDICARE PART B | Masin, Shirley | ** | 002746 | HOME VISIT EST | 150.51 |
| 02/19/19 | 02/15/19 | 10562 | N | MEDICARE PART B | Mechetner, Mina | *** | 000759 | HOME VISIT EST | 150.51 |
| 04/27/19 | 04/26/19 | 11054 | N | MEDICARE PART B | Mechetner, Mina | * | 000759 | HOME VISIT EST | 150.51 |
| 05/24/19 | 05/23/19 | 11275 | N | MEDICARE PART B | Mera, Hilda | | 003124 | HOME VISIT EST | 214.75 |
| 04/22/19 | 04/19/19 | 11003 | N | MEDICARE PART B | MILLER, BERNARD | * | 003203 | HOME VISIT - SUBSEQU | 145.72 |
| 02/13/19 | 02/11/19 | 10531 | N | MEDICARE PART B | Milshteyn, Olga | **** | 002098 | HOME VISIT EST | 150.51 |
| 04/16/19 | 04/15/19 | 10961 | N | MEDICARE PART B | Milshteyn, Olga | * | 002098 | HOME VISIT EST | 150.51 |
| 05/30/19 | 01/17/19 | 10317 | N | MEDICARE PART B | Miranda, Armando | **** | 003153 | HOME VISIT EST | 150.51 |
| 05/30/19 | 02/28/19 | 10695 | N | MEDICARE PART B | Miranda, Armando | *** | 003153 | HOME VISIT EST | 150.51 |
| 05/24/19 | 05/22/19 | 11266 | N | MEDICARE PART B | Montiel, Edy | | 003252 | HOME VISIT-NEW PT- L | 204.39 |
| 02/06/19 | 02/05/19 | 10451 | N | MEDICARE PART B | Mooney, Ethel | **** | 002379 | HOME VISIT EST. | 202.66 |
| 04/17/19 | 04/16/19 | 10964 | N | MEDICARE PART B | Mooney, Ethel | * | 002379 | HOME VISIT EST. | 202.66 |
| 03/05/19 | 02/28/19 | 10659 | N | MEDICARE PART B | Morales Portales, Ja | *** | 003144 | HOME VISIT EST | 150.51 |
| 04/12/19 | 04/11/19 | 10930 | N | MEDICARE PART B | Morales Portales, Ja | ** | 003144 | HOME VISIT EST | 223.72 |
| 02/06/19 | 02/04/19 | 10449 | N | MEDICARE PART B | Morales, Isabel | **** | 002398 | HOME VISIT EST | 150.51 |
| 04/09/19 | 04/08/19 | 10894 | N | MEDICARE PART B | Morales, Isabel | ** | 002398 | HOME VISIT EST | 150.51 |
| 02/16/19 | 02/14/19 | 10550 | N | MEDICARE PART B | Morales, Martha | *** | 003135 | HOME VISIT EST. | 149.91 |
| 01/29/19 | 01/24/19 | 10356 | N | MEDICARE PART B | Mosheyev, Umanel | **** | 002836 | HOME VISIT EST | 150.51 |
| 03/27/19 | 03/25/19 | 10791 | N | MEDICARE PART B | Mosheyev, Umanel | ** | 002836 | HOME VISIT EST | 150.51 |
| 05/06/19 | 05/03/19 | 11119 | N | MEDICARE PART B | Munoz, Cecilia | * | 002605 | HOME VISIT EST | 150.51 |
| 04/26/19 | 04/25/19 | 11045 | N | MEDICARE PART B | Nalbandyan, Yuliya | * | 002709 | HOME VISIT EST | 150.51 |
| 05/24/19 | 05/23/19 | 11284 | N | MEDICARE PART B | Nalbandyan, Yuliya | | 002709 | HOME VISIT EST | 97.76 |
| 03/28/19 | 03/26/19 | 10801 | N | MEDICARE PART B | Nalbandyan, Yuri | ** | 002706 | HOME VISIT EST | 150.51 |
| 05/24/19 | 05/23/19 | 11285 | N | MEDICARE PART B | Nalbandyan, Yuri | | 002706 | HOME VISIT EST | 97.76 |
| 03/06/19 | 03/04/19 | 10687 | N | MEDICARE PART B | Nunez, Teolinda | *** | 003191 | DOMICIL/REST | 214.05 |
| 05/07/19 | 05/06/19 | 11140 | N | MEDICARE PART B | Nunez, Teolinda | * | 003191 | DOMICIL/REST | 162.87 |
| 02/26/19 | 02/25/19 | 10631 | N | MEDICARE PART B | Oliphant, Michael | *** | 001685 | HOME VISIT EST | 150.51 |
| 04/30/19 | 04/29/19 | 11072 | N | MEDICARE PART B | Oliphant, Michael | * | 001685 | HOME VISIT EST | 150.51 |
| 01/25/19 | 01/23/19 | 10351 | N | MEDICARE PART B | Olivera, Angel | **** | 001686 | HOME VISIT EST. | 202.66 |
| 03/29/19 | 03/27/19 | 10814 | N | MEDICARE PART B | Olivera, Angel | ** | 001686 | HOME VISIT EST. | 202.66 |
| 05/30/19 | 05/29/19 | 11313 | N | MEDICARE PART B | Olivera, Angel | | 001686 | HOME VISIT EST. | 202.66 |
| 01/16/19 | 01/14/19 | 10277 | N | MEDICARE PART B | Peguero, Mercedes | **** | 001705 | HOME VISIT EST | 214.75 |
| 04/22/19 | 04/19/19 | 11004 | N | MEDICARE PART B | Peguero, Mercedes | * | 001705 | HOME VISIT EST | 300.64 |
| 05/21/19 | 05/20/19 | 11260 | N | MEDICARE PART B | Peguero, Mercedes | | 001705 | HOME VISIT EST | 97.76 |
| 05/21/19 | 05/20/19 | 11259 | N | MEDICARE PART B | Peguero, Negia | | 003244 | HOME VISIT - SUBSEQU | 145.72 |
| 02/26/19 | 02/25/19 | 10625 | N | MEDICARE PART B | Perez Fernandez, Jos | *** | 001814 | HOME VISIT EST | 150.51 |
| 04/30/19 | 04/29/19 | 11068 | N | MEDICARE PART B | Perez Fernandez, Jos | * | 001814 | HOME VISIT EST | 223.72 |
| 03/05/19 | 02/28/19 | 10665 | N | MEDICARE PART B | Petrosova, Lyudmila | *** | 001887 | HOME VISIT EST | 150.51 |
| 04/26/19 | 04/25/19 | 11048 | N | MEDICARE PART B | Petrosova, Lyudmila | * | 001887 | HOME VISIT EST | 97.76 |
| 03/08/19 | 03/06/19 | 10718 | N | MEDICARE PART B | Plumas, Maria | *** | 002166 | HOME VISIT EST | 214.75 |
| 05/24/19 | 05/22/19 | 11270 | N | MEDICARE PART B | Plumas, Maria | | 002166 | HOME VISIT EST | 150.51 |
| 02/13/19 | 02/11/19 | 10520 | N | MEDICARE PART B | Plummer, Michelle | **** | 002898 | HOME VISIT EST | 223.72 |
| 04/16/19 | 04/15/19 | 10952 | N | MEDICARE PART B | Plummer, Michelle | * | 002898 | HOME VISIT EST. | 202.66 |
| 03/01/19 | 02/27/19 | 10657 | N | MEDICARE PART B | Porro, Olga | *** | 002263 | HOME VISIT EST. | 202.66 |
| 03/29/19 | 03/27/19 | 10818 | N | MEDICARE PART B | Porro, Olga | ** | 002263 | HOME VISIT EST | 97.76 |
| 03/06/19 | 03/04/19 | 10679 | N | MEDICARE PART B | Powell, Stevell | *** | 002908 | HOME VISIT EST | 150.51 |
| 04/11/19 | 03/05/19 | 10704 | N | MEDICARE PART B | Prophete, Altina | *** | 003129 | DOMICIL/REST | 162.87 |
| 05/08/19 | 05/07/19 | 11155 | N | MEDICARE PART B | Prophete, Altina | * | 003129 | DOMICIL/REST | 110.12 |
| 01/16/19 | 01/14/19 | 10279 | N | MEDICARE PART B | Punjwani, Noorjahan | **** | 002782 | HOME VISIT EST | 150.51 |
| 04/22/19 | 04/19/19 | 11006 | N | MEDICARE PART B | Punjwani, Noorjahan | ** | 002782 | HOME VISIT EST | 150.51 |

Selected 2 companies. (Insurance Only) PATRICE TORRENCE, DPM

# Claims Never Sent Ledger Report Run 06-13-2019

| DONE | DT_SV | CLM | TY | BILLED TO | PATIENT | * CHART | DESCRIPTION | AMOUNT |
|------|-------|-----|----|-----------|---------|---------|-------------|--------|

Range = 01/01/19 - 05/31/19 Page: 4

| DONE | DT_SV | CLM | TY | BILLED TO | PATIENT | * | CHART | DESCRIPTION | AMOUNT |
|------|-------|-----|----|-----------|---------|---|-------|-------------|--------|
| 01/25/19 | 01/22/19 | 10343 | N | MEDICARE PART B | Purcell, Clara Elden | **** | 003050 | DOMICIL/REST | 110.12 |
| 03/07/19 | 03/05/19 | 10705 | N | MEDICARE PART B | Purcell, Clara Elden | *** | 003050 | DOMICIL/REST | 110.12 |
| 05/08/19 | 05/07/19 | 11156 | N | MEDICARE PART B | Purcell, Clara Elden | * | 003050 | DOMICIL/REST | 162.87 |
| 02/05/19 | 02/01/19 | 10436 | N | MEDICARE PART B | Purcell, Rita | **** | 003094 | HOME VISIT EST | 150.51 |
| 04/02/19 | 03/29/19 | 10824 | N | MEDICARE PART B | Purcell, Rita | ** | 003094 | HOME VISIT EST | 150.51 |
| 06/01/19 | 05/31/19 | 11339 | N | MEDICARE PART B | Purcell, Rita | | 003094 | HOME VISIT EST | 150.51 |
| 05/10/19 | 05/09/19 | 11190 | N | MEDICARE PART B | Quintero, Danay | * | 003242 | HOME VISIT - SUBSEQU | 218.93 |
| 01/16/19 | 01/14/19 | 10276 | N | MEDICARE PART B | Ramirez, Carmen | **** | 002982 | HOME VISIT EST | 150.51 |
| 04/19/19 | 04/18/19 | 10994 | N | MEDICARE PART B | Ramirez, Carmen | * | 002982 | HOME VISIT EST | 150.51 |
| 05/21/19 | 05/20/19 | 11258 | N | MEDICARE PART B | Ramirez, Carmen | | 002982 | HOME VISIT EST | 97.76 |
| 02/20/19 | 02/18/19 | 10572 | N | MEDICARE PART B | Rivera, Felicita | *** | 002653 | HOME VISIT EST | 150.51 |
| 04/23/19 | 04/22/19 | 11014 | N | MEDICARE PART B | Rivera, Felicita | * | 002653 | HOME VISIT EST | 150.51 |
| 04/10/19 | 02/05/19 | 10469 | N | MEDICARE PART B | Roberson, Mary | **** | 002806 | DOMICIL/REST | 162.87 |
| 04/10/19 | 04/09/19 | 10912 | N | MEDICARE PART B | Roberson, Mary | ** | 002806 | DOMICIL/REST | 162.87 |
| 02/28/19 | 02/26/19 | 10644 | N | MEDICARE PART B | Rodelo, Leonardo | *** | 003023 | HOME VISIT EST | 150.51 |
| 05/10/19 | 05/09/19 | 11188 | N | MEDICARE PART B | Rodelo, Leonardo | * | 003023 | HOME VISIT EST | 150.51 |
| 03/06/19 | 03/04/19 | 10684 | N | MEDICARE PART B | Rodriguez, Lidia | *** | 002086 | DOMICIL/REST | 162.87 |
| 05/07/19 | 05/06/19 | 11136 | N | MEDICARE PART B | Rodriguez, Lidia | * | 002086 | DOMICIL/REST | 162.87 |
| 03/06/19 | 03/04/19 | 10688 | N | MEDICARE PART B | Romero, Felicia | *** | 003192 | DOMICIL/REST | 214.05 |
| 05/07/19 | 05/06/19 | 11138 | N | MEDICARE PART B | Romero, Felicia | * | 003192 | DOMICIL/REST | 162.87 |
| 01/30/19 | 01/28/19 | 10397 | N | MEDICARE PART B | Roque, Eduardo | **** | 002984 | HOME VISIT EST | 214.75 |
| 04/03/19 | 04/01/19 | 10835 | N | MEDICARE PART B | Roque, Eduardo | ** | 002984 | HOME VISIT EST | 227.43 |
| 03/13/19 | 03/12/19 | 10746 | N | MEDICARE PART B | Ross, Joe | *** | 002464 | HOME VISIT EST | 150.51 |
| 05/15/19 | 05/14/19 | 11211 | N | MEDICARE PART B | Ross, Joe | | 002464 | HOME VISIT EST | 150.51 |
| 03/13/19 | 03/11/19 | 10740 | N | MEDICARE PART B | Rozenman, Mark | *** | 002625 | HOME VISIT EST | 150.51 |
| 05/14/19 | 05/13/19 | 11197 | N | MEDICARE PART B | Rozenman, Mark | * | 002625 | HOME VISIT EST | 150.51 |
| 02/13/19 | 02/11/19 | 10525 | N | MEDICARE PART B | Rudakov, Gary | **** | 003168 | HOME VISIT - SUBSEQU | 145.72 |
| 04/16/19 | 04/15/19 | 10956 | N | MEDICARE PART B | Rudakov, Gary | * | 003168 | HOME VISIT EST | 150.51 |
| 04/03/19 | 04/01/19 | 10838 | N | MEDICARE PART B | Sacco, Gyselle | ** | 003209 | DOMICIL/REST | 214.05 |
| 05/31/19 | 05/30/19 | 11324 | N | MEDICARE PART B | Sacco, Gyselle | | 003209 | DOMICIL/REST | 110.12 |
| 02/14/19 | 02/12/19 | 10541 | N | MEDICARE PART B | Sager, Eleanor | **** | 001996 | HOME VISIT EST | 150.51 |
| 04/24/19 | 04/23/19 | 11027 | N | MEDICARE PART B | Sager, Eleanor | * | 001996 | HOME VISIT EST | 150.51 |
| 01/16/19 | 01/14/19 | 10280 | N | MEDICARE PART B | Santiago Gonzalez, C | **** | 003035 | HOME VISIT EST | 150.51 |
| 02/08/19 | 02/06/19 | 10473 | N | MEDICARE PART B | Santiesteban, Violet | **** | 002236 | HOME VISIT EST | 150.51 |
| 04/22/19 | 04/19/19 | 10999 | N | MEDICARE PART B | Santiesteban, Violet | * | 002236 | HOME VISIT EST | 150.51 |
| 05/31/19 | 05/30/19 | 11321 | N | MEDICARE PART B | Sarraulte, Gloria | | 003253 | HOME VISIT-NEW PT- L | 268.63 |
| 01/31/19 | 01/29/19 | 10402 | N | MEDICARE PART B | Shivdhar, Chanmoni | **** | 002821 | HOME VISIT EST | 150.51 |
| 04/10/19 | 04/09/19 | 10899 | N | MEDICARE PART B | Shivdhar, Chanmoni | ** | 002821 | HOME VISIT EST | 150.51 |
| 02/09/19 | 02/07/19 | 10496 | N | MEDICARE PART B | Shnayder, Sofa | **** | 002200 | HOME VISIT EST | 150.51 |
| 04/12/19 | 04/11/19 | 10937 | N | MEDICARE PART B | Shnayder, Sofa | * | 002200 | HOME VISIT EST | 150.51 |
| 01/29/19 | 01/25/19 | 10387 | N | MEDICARE PART B | Smelyanskiy, Genokh | **** | 002588 | HOME VISIT EST | 150.51 |
| 04/02/19 | 03/29/19 | 10829 | N | MEDICARE PART B | Smelyanskiy, Genokh | ** | 002588 | HOME VISIT EST | 150.51 |
| 04/27/19 | 04/26/19 | 11059 | N | MEDICARE PART B | Smelyanskiy, Genokh | * | 002588 | HOME VISIT EST. | 97.76 |
| 05/28/19 | 05/24/19 | 11294 | N | MEDICARE PART B | Smelyanskiy, Genokh | | 002588 | HOME VISIT EST. | 149.91 |
| 02/13/19 | 02/11/19 | 10532 | N | MEDICARE PART B | Stremouskaya, Tatian | **** | 002343 | HOME VISIT EST | 150.51 |
| 04/16/19 | 04/15/19 | 10962 | N | MEDICARE PART B | Stremouskaya, Tatian | * | 002343 | HOME VISIT EST | 150.51 |
| 04/30/19 | 04/29/19 | 11079 | N | MEDICARE PART B | Stubbs, Aaron | * | 002395 | HOME VISIT EST | 150.51 |
| 01/23/19 | 01/18/19 | 10326 | N | MEDICARE PART B | Taflya, Naum | **** | 002631 | HOME VISIT EST | 97.76 |
| 04/02/19 | 03/29/19 | 10830 | N | MEDICARE PART B | Taflya, Naum | ** | 002631 | HOME VISIT EST. | 202.66 |
| 04/28/19 | 04/26/19 | 11064 | N | MEDICARE PART B | Taflya, Naum | * | 002631 | HOME VISIT EST | 97.76 |
| 05/28/19 | 05/24/19 | 11296 | N | MEDICARE PART B | Taflya, Naum | | 002631 | HOME VISIT EST | 97.76 |
| 02/14/19 | 02/12/19 | 10539 | N | MEDICARE PART B | Tarlova, Victoria | **** | 001762 | HOME VISIT EST | 223.72 |
| 04/24/19 | 04/23/19 | 11025 | N | MEDICARE PART B | Tarlova, Victoria | * | 001762 | HOME VISIT EST | 227.43 |
| 02/08/19 | 02/06/19 | 10484 | N | MEDICARE PART B | Thurston, Jeffrey | **** | 002976 | HOME VISIT EST | 150.51 |
| 04/18/19 | 04/17/19 | 10986 | N | MEDICARE PART B | Thurston, Jeffrey | * | 002976 | HOME VISIT EST | 150.51 |
| 01/25/19 | 01/23/19 | 10353 | N | MEDICARE PART B | Trice, Gloria | **** | 003085 | HOME VISIT EST | 150.51 |
| 04/05/19 | 04/03/19 | 10857 | N | MEDICARE PART B | Trice, Gloria | ** | 003085 | HOME VISIT EST | 150.51 |
| 05/30/19 | 05/29/19 | 11316 | N | MEDICARE PART B | Trice, Gloria | | 003085 | HOME VISIT EST | 97.76 |
| 01/25/19 | 01/23/19 | 10352 | N | MEDICARE PART B | Trice, James | **** | 003084 | HOME VISIT EST | 150.51 |
| 04/05/19 | 04/03/19 | 10856 | N | MEDICARE PART B | Trice, James | ** | 003084 | HOME VISIT EST | 150.51 |
| 05/30/19 | 05/29/19 | 11317 | N | MEDICARE PART B | Trice, James | | 003084 | HOME VISIT EST | 97.76 |
| 02/20/19 | 02/18/19 | 10575 | N | MEDICARE PART B | Urmeneta, Luis | *** | 003176 | HOME VISIT - SUBSEQU | 145.72 |
| 04/23/19 | 04/22/19 | 11017 | N | MEDICARE PART B | Urmeneta, Luis | * | 003176 | HOME VISIT EST | 214.75 |
| 03/09/19 | 03/07/19 | 10720 | N | MEDICARE PART B | Valle, Amailia | *** | 001832 | HOME VISIT EST | 150.51 |
| 05/17/19 | 05/16/19 | 11242 | N | MEDICARE PART B | Valle, Amailia | | 001832 | HOME VISIT EST | 150.51 |

Selected 2 companies. (Insurance Only) PATRICE TORRENCE, DPM

# Claims Never Sent Ledger Report Run 06-13-2019

| DONE | DT_SV | CLM | TY | BILLED TO | PATIENT | * CHART | DESCRIPTION | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Range = 01/01/19 - 05/31/19 Page: 5 | |
| 05/30/19 | 01/17/19 | 10320 | N | MEDICARE PART B | Vera, Estela | **** 003154 | HOME VISIT EST | 150.51 |
| 03/05/19 | 02/28/19 | 10661 | N | MEDICARE PART B | Vera, Estela | *** 003154 | HOME VISIT EST | 97.76 |
| 01/17/19 | 01/15/19 | 10291 | N | MEDICARE PART B | Vigoa, Carmen | **** 003074 | DOMICIL/REST | 162.87 |
| 05/07/19 | 05/06/19 | 11127 | N | MEDICARE PART B | Vigoa, Carmen | * 003074 | DOMICIL/REST | 162.87 |
| 03/06/19 | 03/01/19 | 10676 | N | MEDICARE PART B | Volpova, Rimma | *** 002175 | HOME VISIT EST | 150.51 |
| 05/18/19 | 05/17/19 | 11253 | N | MEDICARE PART B | Volpova, Rimma | 002175 | HOME VISIT EST | 150.51 |
| 04/25/19 | 01/16/19 | 10301 | N | MEDICARE PART B | Walker, George | **** 002205 | DOMICIL/REST | 162.87 |
| 04/25/19 | 04/24/19 | 11030 | N | MEDICARE PART B | Walker, George | * 002205 | DOMICIL/REST | 162.87 |
| 04/17/19 | 04/16/19 | 10971 | N | MEDICARE PART B | Warren, Fannie | * 003211 | HOME VISIT - SUBSEQU | 145.72 |
| 05/17/19 | 05/16/19 | 11234 | N | MEDICARE PART B | Weisz, Terry | 003232 | HOME VISIT - SUBSEQU | 145.72 |
| 02/26/19 | 02/25/19 | 10633 | N | MEDICARE PART B | Williams, Audrey | *** 001868 | HOME VISIT EST | 150.51 |
| 04/30/19 | 04/29/19 | 11073 | N | MEDICARE PART B | Williams, Audrey | * 001868 | HOME VISIT EST | 150.51 |
| 02/26/19 | 02/25/19 | 10632 | N | MEDICARE PART B | Williams, Lesley | *** 001976 | HOME VISIT EST | 150.51 |
| 04/30/19 | 04/29/19 | 11074 | N | MEDICARE PART B | Williams, Lesley | * 001976 | HOME VISIT EST | 150.51 |
| 01/29/19 | 01/24/19 | 10357 | N | MEDICARE PART B | Yashaeva, Tamara | **** 002835 | HOME VISIT EST | 150.51 |
| 03/27/19 | 03/25/19 | 10790 | N | MEDICARE PART B | Yashaeva, Tamara | ** 002835 | HOME VISIT EST | 150.51 |
| 01/16/19 | 01/14/19 | 10275 | N | MEDICARE PART B | Yaster, Sally | **** 002415 | HOME VISIT EST | 150.51 |
| 02/19/19 | 02/15/19 | 10567 | N | MEDICARE PART B | Yevdayev, Nellya | *** 002468 | HOME VISIT EST | 150.51 |
| 02/19/19 | 02/15/19 | 10565 | N | MEDICARE PART B | Yevdayev, Nobert | *** 002474 | HOME VISIT EST | 150.51 |
| 06/06/19 | 01/23/19 | 10348 | N | MEDICARE PART B | Zavulunov, Yevgeniya | **** 002675 | HOME VISIT EST | 97.76 |

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| Cur: $6,192.41 | 30+: $12,125.27 | 60+: $6,391.21 | 90+: $8,910.48 | 120+: $10,795.82 | |
| | | 280 Items | | ** MEDICARE PART B | 44,415.19 |
| | | | | Total Receivables | 44,415.19 |
| | | | | Current 1-30 Days | 6,192.41 |
| | | | | 31-59 Days | 12,125.27 |
| | | | | 60-89 Days | 6,391.21 |
| | | | | 90-120Days | 8,910.48 |
| | | | | 120+ Days | 10,795.82 |

PRI ONLY

Selected 2 companies. (Insurance Only) PATRICE TORRENCE, DPM

# BankUnited

P.O. Box 521599    Miami, FL 33152-1599

Page 1 of 6

| | |
|---|---|
| **Statement Date:** | **May 31, 2019** |
| Account Number: | ********9123 |

## Customer Service Information

 Client Care: 877-779-BANK (2265)

 Web Site: www.bankunited.com

 Bank Address: BankUnited
P.O. Box 521599
Miami, FL 33152-1599

>003762 3022806 0001 008229 10Z
PATRICE M TORRENCE DPM LLC
DEBTOR-IN-POSSESSION
CASE # 19-12804-JKO
330 NW 49TH AVE
PLANTATION FL 33317



## Customer Message Center

Introducing our new fraud text alert service! With BankUnited's fraud monitoring service, keeping your debit card safe is as easy as sending a text.

## DIP NON INT BUSINESS DDA  Account ********9123

### Account Summary

| | | | |
|---|---|---|---|
| Statement Balance as of 04/30/2019 | | | $6,603.81 |
| Plus | 4 | Deposits and Other Credits | $27,198.05 |
| Less | 45 | Withdrawals, Checks, and Other Debits | $25,778.36 |
| Less | | Service Charge | $0.00 |
| Plus | | Interest Paid | $0.00 |
| Statement Balance as of 05/31/2019 | | | $8,023.50 |

### Activity By Date

| Date | Description | Withdrawals | Deposits | Balance |
|---|---|---|---|---|
| 05/01/2019 | AMZN MKTP US*MZ6188<br>AMZN.COM/BILL WA 1405<br>DDA RF#061524 AMZN MKTP | $119.98 | | $6,483.83 |
| 05/01/2019 | AMZN MKTP US*MZ6KM1<br>AMZN.COM/BILL WA 1405<br>DDA RF#092709 AMZN MKTP | $32.98 | | $6,450.85 |
| 05/01/2019 | GILL PODIATRY SUPPL<br>STRONGSVILLE OH 1405<br>DDA RF#060019 GILL PODIA | $204.27 | | $6,246.58 |
| 05/01/2019 | SHELL SERVICE STATI | $50.00 | | $6,196.58 |

**BankUnited, N.A.**

**Statement Date: May 31, 2019**

Account Number: ********9123

## Activity By Date

| Date | Description | Withdrawals | Deposits | Balance |
|------|-------------|-------------|----------|---------|
| | MIAMI FL 1405 | | | |
| | PIN RF#021752 SHELL SERV | | | |
| 05/01/2019 | GMF Lease      WU GMFLeas | $1,290.57 | | $4,906.01 |
| | PATRICE TORRENCE | | | |
| 05/02/2019 | SIR SPEEDY | $67.41 | | $4,838.60 |
| | 954-5842850 FL 1405 | | | |
| | DDA RF#010382 SIR SPEEDY | | | |
| 05/02/2019 | WALMART.COM 8009666 | $31.43 | | $4,807.17 |
| | 800-966-6546 AR 1405 | | | |
| | DDA RF#079350 WALMART.CO | | | |
| 05/03/2019 | SHELL SERVICE STATI | $55.38 | | $4,751.79 |
| | PLANTATION FL 1405 | | | |
| | PIN RF#009895 SHELL SERV | | | |
| 05/03/2019 | Withdrawal | $500.00 | | $4,251.79 |
| 05/06/2019 | SHELL SERVICE STATI | $54.78 | | $4,197.01 |
| | DAVIE FL 1405 | | | |
| | PIN RF#007464 SHELL SERV | | | |
| 05/06/2019 | CHECK #102 | $450.00 | | $3,747.01 |
| 05/06/2019 | CHECK #105 | $1,098.93 | | $2,648.08 |
| 05/07/2019 | *BROWARD & 441 | $160.00 | | $2,488.08 |
| | FORT LAUDERDA FL 1405 | | | |
| | ATM RF#266898 BANK OF AM | | | |
| 05/07/2019 | SURCHARGE RF266898 | $3.00 | | $2,485.08 |
| | *BROWARD & 441 | | | |
| | FORT LAUDERDA FL 1405 | | | |
| 05/09/2019 | SUNPASS*ACC14305600 | $25.00 | | $2,460.08 |
| | 888-865-5352 FL 1405 | | | |
| | DDA RF#057360 SUNPASS*AC | | | |
| 05/09/2019 | CHECK #106 | $1,132.86 | | $1,327.22 |
| 05/10/2019 | Customer Deposit | | $163.00 | $1,490.22 |
| 05/10/2019 | Customer Deposit | | $14,176.93 | $15,667.15 |
| 05/10/2019 | Withdrawal | $2,100.00 | | $13,567.15 |
| 05/10/2019 | CHECK #109 | $3,000.00 | | $10,567.15 |
| 05/13/2019 | 2901 S UNIVERSITY D | $1,487.56 | | $9,079.59 |
| | DAVIE FL 1405 | | | |



P.O. Box 521599    Miami, FL 33152-1599

**Page 3 of 6**

**Statement Date: May 31, 2019**
Account Number: ********9123



## Activity By Date

| Date | Description | Withdrawals | Deposits | Balance |
|------|-------------|------------|---------|---------|
| | PIN RF#913100822417 FIRESTONE2 | | | |
| 05/13/2019 | DOLLARTREE 10153 W | $20.84 | | $9,058.75 |
| | SUNRISE FL 1405 | | | |
| | PIN RF#535233 DOLLARTREE | | | |
| 05/13/2019 | MULTISPACE PRKG MET | $1.50 | | $9,057.25 |
| | FORT LAUDERDA FL 1405 | | | |
| | DDA RF#001066 MULTISPACE | | | |
| 05/13/2019 | RACETRAC665   00006 | $62.29 | | $8,994.96 |
| | FORT LAUDERDA FL 1405 | | | |
| | DDA RF#083131 RACETRAC66 | | | |
| 05/14/2019 | VITALITY MEDICAL IN | $95.46 | | $8,899.50 |
| | 801-7334449 UT 1405 | | | |
| | DDA RF#039023 VITALITY M | | | |
| 05/14/2019 | CHECK #107 | $600.00 | | $8,299.50 |
| 05/14/2019 | AETNA SM GRP    CIP SM GRP | $1,069.28 | | $7,230.22 |
| | 82842190 | | | |
| | DR PATRICE TORRENCE | | | |
| 05/15/2019 | SUNSHINE 103 | $61.81 | | $7,168.41 |
| | NORTH MIAMI FL 1405 | | | |
| | PIN RF#700856 SUNSHINE 1 | | | |
| 05/16/2019 | ICS SOFTWARE LTD ACH Debit | $599.00 | | $6,569.41 |
| | 5216632693 | | | |
| | Patrice Torrence | | | |
| 05/17/2019 | Customer Deposit | | $4,495.31 | $11,064.72 |
| 05/17/2019 | Withdrawal | $2,166.17 | | $8,898.55 |
| 05/17/2019 | BANKRS INS     PAYMENTS | $61.00 | | $8,837.55 |
| | PATRICE TORRENCE | | | |
| 05/20/2019 | WAWA 5232 | $57.23 | | $8,780.32 |
| | FT LAUDERDALE FL 1405 | | | |
| | PIN RF#091094 WAWA 5232 | | | |
| 05/20/2019 | CHECK #110 | $1,103.85 | | $7,676.47 |
| 05/20/2019 | CHECK #111 | $1,132.86 | | $6,543.61 |
| 05/22/2019 | COMCAST BROWARD CS | $241.96 | | $6,301.65 |
| | 800-266-2278 FL 1405 | | | |
| | DDA RF#051654 COMCAST BR | | | |

**BankUnited, N.A.**

| Statement Date: **May 31, 2019** |
| Account Number: ********9123 |

## Activity By Date

| Date | Description | Withdrawals | Deposits | Balance |
|------|-------------|-------------|----------|---------|
| 05/23/2019 | NATIONAL BACKGROUND WESTERVILLE OH 1405 DDA RF#001689 NATIONAL B | $94.00 | | $6,207.65 |
| 05/23/2019 | 6921 W BROWARD BLVD PLANTATION FL 1405 PIN RF#523493 PUBLIX | $11.00 | | $6,196.65 |
| 05/23/2019 | CHECK #112 | $3,000.00 | | $3,196.65 |
| 05/24/2019 | Customer Deposit | | $8,362.81 | $11,559.46 |
| 05/24/2019 | RACETRAC665 FT LAUDERDAL FL 1405 PIN RF#061264 RACETRAC66 | $40.28 | | $11,519.18 |
| 05/28/2019 | AT&T*BILL PAYMENT 800-288-2020 GA 1405 DDA RF#083514 AT&T*BILL | $291.45 | | $11,227.73 |
| 05/28/2019 | PICA          BILL PAY 3553106 Patrice M Torrence DPM | $1,380.37 | | $9,847.36 |
| 05/28/2019 | CHECK #108 | $450.00 | | $9,397.36 |
| 05/29/2019 | 2990 W BROWARD BLV FORT LAUDERDA FL 1405 PIN RF#085846931159 7-ELEVEN | $54.09 | | $9,343.27 |
| 05/29/2019 | GMF Lease      WU GMFLeas PATRICE TORRENCE | $1,290.57 | | $8,052.70 |
| 05/30/2019 | SUNPASS*ACC14305600 888-865-5352 FL 1405 DDA RF#007310 SUNPASS*AC | $25.00 | | $8,027.70 |
| 05/30/2019 | MB-PARKING PARKMOBI www.parkmobil FL 1405 DDA RF#000145 MB-PARKING | $3.35 | | $8,024.35 |
| 05/30/2019 | MB-PARKING PARKMOBI www.parkmobil FL 1405 DDA RF#000030 MB-PARKING | $0.85 | | $8,023.50 |

## Check Transactions



P.O. Box 521599    Miami, FL 33152-1599

**Statement Date:  May 31, 2019**
Account Number:  ********9123



| Check # | Date | Amount | Check # | Date | Amount | Check # | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 102 | 05/06 | $450.00 | 107 | 05/14 | $600.00 | 110 | 05/20 | $1,103.85 |
| 105* | 05/06 | $1,098.93 | 108 | 05/28 | $450.00 | 111 | 05/20 | $1,132.86 |
| 106 | 05/09 | $1,132.86 | 109 | 05/10 | $3,000.00 | 112 | 05/23 | $3,000.00 |

Items denoted with an "*" indicate processed checks out of sequence.

## Balances by Date

| Date | Balance | Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|---|---|
| 04/30 | $6,603.81 | 05/07 | $2,485.08 | 05/15 | $7,168.41 | 05/23 | $3,196.65 |
| 05/01 | $4,906.01 | 05/09 | $1,327.22 | 05/16 | $6,569.41 | 05/24 | $11,519.18 |
| 05/02 | $4,807.17 | 05/10 | $10,567.15 | 05/17 | $8,837.55 | 05/28 | $9,397.36 |
| 05/03 | $4,251.79 | 05/13 | $8,994.96 | 05/20 | $6,543.61 | 05/29 | $8,052.70 |
| 05/06 | $2,648.08 | 05/14 | $7,230.22 | 05/22 | $6,301.65 | 05/30 | $8,023.50 |

## Other Balances

| | |
|---|---|
| Minimum Balance this Statement Period | $1,327.22 |



At BankUnited, we want to make sure that using your debit card is always as safe and convenient as possible. That's why we're launching fraud text alerts as part of our ongoing fraud monitoring program. If we have your mobile phone number on file, you will be automatically enrolled in our fraud text alert service. To learn more about our new service, please call us at 1-877-779-2265.

**BankUnited, N.A.**

03762 3022806 010469 020937 0003/0004

**Statement Date: May 31, 2019**
Account Number: ********9123

---

**If your account does not balance please check the following carefully:**
Have you entered the amount of each check in your checkbook register?
Are the amounts of your deposits and other additions entered in your checkbook register the same as those on this statement?
Have you checked all additions and subtractions in your checkbook register?
Have you carried the correct balance forward when starting a new page in your checkbook register?

**IN CASE OF QUESTIONS OR ERRORS ABOUT YOUR STATEMENT:**
**PLEASE CALL (TOLL FREE) 1-877-779-BANK (2265) OR WRITE US AT:**

BankUnited Operations / EFT Error
7815 NW 148th ST, Miami Lakes, FL 33016

**For Consumer Customers Only**
Please contact us if you think your statement is wrong or if you need additional information about a transaction. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.
1. Tell us your name and account number.
2. Describe the error or the transfer you are unsure about and explain as clearly as you can why you believe there is an error or why you need further information.
3. Tell us the dollar amount of the suspected error.
You may be required to put your request in writing. We will investigate your complaint and will correct any error promptly.

**For Electronic Funds Transfers,** if we take more than 10 business days to investigate and correct the error, (20 business days if you are a new customer for electronic funds transfers occurring during the first 30 days after the first deposit is made to your account), we will recredit your consumer account for the amount you think is in error (plus interest if your account earns interest), so that you will have the use of the money during the time it takes us to complete our investigation.

**For Substitute Checks,** if we take more than 10 business days to investigate and correct the error, we will recredit your consumer account for the amount of loss up to the lesser of $2,500.00 (plus interest if your account earns interest) or the amount of the substitute check. If your account is new (30 days from the date your account was established), has been subject to repeated overdrafts, or we believe the claim is fraudulent, we may delay the availability of recredited funds until we determine the claim is valid or until the 45th day after the claim was submitted.

---





BankUnited, N.A.

**BankUnited**



#102          05/06/19          $450.00



#105          05/06/19          $1,098.93



#106          05/09/19          $1,132.86



#107          05/14/19          $600.00



#108          05/28/19          $450.00



#109          05/10/19          $3,000.00



#110          05/20/19          $1,103.85



#111          05/20/19          $1,132.86

**BankUnited**



#112          05/23/19          $3,000.00



P.O. Box 15284
Wilmington, DE 19850

**Business Advantage**

**Customer service information**

📞 1.888.BUSINESS (1.888.287.4637)

🖥 bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

PATRICE M TORRENCE   DBA
PATRICE M TORRENCE DPM
330 NW 49TH AVE
PLANTATION, FL  33317-2030

# Your Business Fundamentals Checking

for May 1, 2019 to May 31, 2019                              Account number:        6406

**PATRICE M TORRENCE   DBA    PATRICE M TORRENCE DPM**

## Account summary

| | | | |
|---|---|---|---|
| Beginning balance on May 1, 2019 | -$0.99 | # of deposits/credits: | 36 |
| Deposits and other credits | 30,810.24 | # of withdrawals/debits: | 18 |
| Withdrawals and other debits | -30,809.25 | # of items-previous cycle[1]: | 1 |
| Checks | -0.00 | # of days in cycle: | 31 |
| Service fees | -0.00 | Average ledger balance: $1,672.89 | |
| **Ending balance on May 31, 2019** | **$0.00** | [1]Includes checks paid,deposited items&other debits | |

---

**Bank of America Business Advantage**

## What's on your mind?

Business owners like you can join the Bank of America® Advisory Panel to help us understand what you like and don't like.
Enter code **SBDD** at **bankofamerica.com/AdvisoryPanel** to learn more and join.

Inclusion on the Advisory Panel subject to qualifications.                              SSM-01-19-2128.D1 | ARG377KX

PATRICE M TORRENCE   DBA   |   Account #         6406   |   May 1, 2019 to May 31, 2019

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

How to Contact Us - You may call us at the telephone number listed on the front of this statement.

Updating your contact information - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

Electronic transfers: In case of errors or questions about your electronic transfers - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2019 Bank of America Corporation

**Bank of America, N.A. Member FDIC and**  **Equal Housing Lender**



# Your checking account

PATRICE M TORRENCE  DBA  |  Account #      6406  |  May 1, 2019 to May 31, 2019

## Deposits and other credits

| Date | Description | Amount |
|------|-------------|--------|
| 05/01/19 | FCSO, INC.      DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE      PATRICE    CO<br>ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 571.39 |
| 05/02/19 | FCSO, INC.      DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE      PATRICE    CO<br>ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 183.86 |
| 05/03/19 | AARP Supplementa DES:HCCLAIMPMT ID:XXXXXXXXX  INDN:Patrice M Torrence DPM  CO<br>ID:1362739571 CCD  PMT INFO:TRN*1*9432214569*1362739571*000036273\ | 28.37 |
| 05/06/19 | FCSO, INC.      DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE      PATRICE    CO<br>ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 3,277.44 |
| 05/07/19 | FCSO, INC.      DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE      PATRICE    CO<br>ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 3,345.81 |
| 05/07/19 | UNITEDHEALTHCARE DES:HCCLAIMPMT ID:XXXXXXXXX  INDN:Patrice M Torrence DPM  CO<br>ID:1411289245 CCD  PMT INFO:TRN*1*1TR33329687*1411289245*000087726\ | 37.16 |
| 05/08/19 | FCSO, INC.      DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE      PATRICE    CO<br>ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 322.26 |
| 05/09/19 | FCSO, INC.      DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE      PATRICE    CO<br>ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 222.72 |
| 05/09/19 | UnitedHealthcare DES:HCCLAIMPMT ID:XXXXXXXXX  INDN:Patrice M Torrence DPM  CO<br>ID:1111187726 CCD  PMT INFO:TRN*1*1433825000*1411289245*000087726\ | 109.60 |
| 05/09/19 | AARP Supplementa DES:HCCLAIMPMT ID:XXXXXXXXX  INDN:Patrice M Torrence DPM  CO<br>ID:1362739571 CCD  PMT INFO:TRN*1*9433719901*1362739571*000036273\ | 75.21 |
| 05/10/19 | FCSO, INC.      DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE      PATRICE    CO<br>ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 6,310.71 |
| 05/10/19 | PALMETTO GBA     DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE      PATRICE    CO<br>ID:9000000096 CCD  PMT INFO:TRN*1*XXXXXXXX*1571062326~ | 214.84 |
| 05/10/19 | AARP Supplementa DES:HCCLAIMPMT ID:XXXXXXXXX  INDN:Patrice M Torrence DPM  CO<br>ID:1362739571 CCD  PMT INFO:TRN*1*9434063297*1362739571*000036273\ | 4.24 |
| 05/13/19 | FCSO, INC.      DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE      PATRICE    CO<br>ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 598.84 |
| 05/14/19 | FCSO, INC.      DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE      PATRICE    CO<br>ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 661.35 |

*continued on the next page*

Bank of America **Business Advantage**

# Thank you for your business

We're committed to finding the smartest path to long-term growth for your business.

Our Small Business Specialists will work with you to help strengthen your business and plan for the future.
Please visit **bankofamerica.com/SmallBusiness** to learn more.

AR7RNN9G | SSM-01-19-2811.B

## Deposits and other credits - continued

| Date | Description | Amount |
|------|-------------|--------|
| 05/15/19 | FCSO, INC.     DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE     PATRICE   CO ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 1,491.54 |
| 05/16/19 | FCSO, INC.     DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE     PATRICE   CO ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 484.92 |
| 05/16/19 | AARP Supplementa DES:HCCLAIMPMT ID:XXXXXXXX INDN:Patrice M Torrence DPM  CO ID:1362739571 CCD  PMT INFO:TRN*1*9435555121*1362739571*000036273\ | 69.41 |
| 05/16/19 | CHECKCARD  0515 AMZN MKTP US AMZN.COM/B AMZN.COM/BILLWA 7443106913508300059 | 17.95 |
| 05/17/19 | FCSO, INC.     DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE     PATRICE   CO ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 731.13 |
| 05/17/19 | UHC OF FL DUAL   DES:HCCLAIMPMT ID:XXXXXXXX INDN:Patrice M Torrence DPM  CO ID:6723957101 CCD  PMT INFO:TRN*1*2019051512801109*1591293865*000004 567\ | 52.72 |
| 05/20/19 | FCSO, INC.     DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE     PATRICE   CO ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 548.86 |
| 05/21/19 | FCSO, INC.     DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE     PATRICE   CO ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 1,394.89 |
| 05/21/19 | AARP Supplementa DES:HCCLAIMPMT ID:XXXXXXXX INDN:Patrice M Torrence DPM  CO ID:1362739571 CCD  PMT INFO:TRN*1*9436727929*1362739571*000036273\ | 143.07 |
| 05/21/19 | UHC OF FL DUAL   DES:HCCLAIMPMT ID:XXXXXXXX INDN:Patrice M Torrence DPM  CO ID:6723957101 CCD  PMT INFO:TRN*1*2019051816600378*1591293865*000004 567\ | 0.29 |
| 05/21/19 | UHC OF FL DUAL   DES:HCCLAIMPMT ID:XXXXXXXX INDN:Patrice M Torrence DPM  CO ID:6723957101 CCD  PMT INFO:TRN*1*2019051816600379*1591293865*000004 567\ | 0.29 |
| 05/22/19 | FCSO, INC.     DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE     PATRICE   CO ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 1,097.93 |
| 05/23/19 | FCSO, INC.     DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE     PATRICE   CO ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 1,002.24 |
| 05/23/19 | AARP Supplementa DES:HCCLAIMPMT ID:XXXXXXXX INDN:Patrice M Torrence DPM  CO ID:1362739571 CCD  PMT INFO:TRN*1*9437445687*1362739571*000036273\ | 195.95 |
| 05/24/19 | FCSO, INC.     DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE     PATRICE   CO ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 4,010.53 |
| 05/28/19 | FCSO, INC.     DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE     PATRICE   CO ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 1,477.41 |
| 05/29/19 | FCSO, INC.     DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE     PATRICE   CO ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 687.93 |
| 05/29/19 | UHC OF FL DUAL   DES:HCCLAIMPMT ID:XXXXXXXX INDN:Patrice M Torrence DPM  CO ID:6723957101 CCD  PMT INFO:TRN*1*2019052516800639*1591293865*000004 567\ | 58.23 |
| 05/30/19 | FCSO, INC.     DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE     PATRICE   CO ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 706.68 |
| 05/31/19 | FCSO, INC.     DES:HCCLAIMPMT ID:1588702195 INDN:TORRENCE     PATRICE   CO ID:6593514335 PPD  PMT INFO:TRN*1*XXXXXXXX*1593514335~ | 652.40 |
| 05/31/19 | UHC OF FL DUAL   DES:HCCLAIMPMT ID:XXXXXXXX INDN:Patrice M Torrence DPM  CO ID:6723957101 CCD  PMT INFO:TRN*1*2019053016200873*1591293865*000004 567\ | 22.07 |

**Total deposits and other credits** **$30,810.24**



# Your checking account

PATRICE M TORRENCE   DBA   |   Account #        6406   |   May 1, 2019 to May 31, 2019

## Withdrawals and other debits

| Date | Description | Amount |
|------|-------------|--------|
| 05/03/19 | HUMANA, INC.   DES:INS PYMT  ID:140800171001140  INDN:800505PATRICE M        CO ID:9040604802 PPD | -78.57 |
| 05/06/19 | OnStar          DES:Bundled Sv ID:4236165  INDN:PATRICE*TORRENCE        CO ID:0000253963 TEL | -38.24 |
| 05/07/19 | AVMED INC.        DES:AVMED INC  ID:M41338217229  INDN:Patrice Torrence        CO ID:1911718107 WEB | -658.97 |
| 05/10/19 | FL TLR cash withdrawal from CHK 6406 | -13,860.11 |
| 05/17/19 | FL TLR cash withdrawal from CHK 6406 | -4,107.86 |
| 05/21/19 | PRINCIPAL-CCA   DES:PRIN FINAN ID:352911800300113  INDN:PATRICE M TORRENCE        CO ID:9INDCCAEFT PPD | -250.00 |
| 05/24/19 | FL TLR cash withdrawal from CHK 6406 | -8,094.06 |
| 05/31/19 | FL TLR cash withdrawal from CHK 6406 | -3,474.27 |

Card account # XXXX XXXX XXXX 2500

| Date | Description | Amount |
|------|-------------|--------|
| 05/06/19 | CHECKCARD  0503 SXM*SIRIUSXM.COM/ACCT 888-635-5144 NY 24692169123100267711022 RECURRING CKCD 4899 XXXXXXXXXXXX2500 XXXX XXXX XXXX 2500 | -28.83 |
| 05/09/19 | CHECKCARD  0508 AMZN MKTP US*MN6PZ7O90 AMZN.COM/BILLWA 24431069128083711106382 CKCD 5942 XXXXXXXXXXXX2500 XXXX XXXX XXXX 2500 | -17.95 |
| 05/09/19 | CHECKCARD  0509 EQUIFAX CONSUMER 866-640-2273 GA 24692169129100613364355 RECURRING CKCD 7321 XXXXXXXXXXXX2500 XXXX XXXX XXXX 2500 | -19.95 |
| 05/21/19 | CHECKCARD  0520 MYFAX  *PROTUS IP SOLN 866-563-9212 CA 24692169140100264200010 RECURRING CKCD 5968 XXXXXXXXXXXX2500 XXXX XXXX XXXX 2500 | -15.00 |
| 05/23/19 | CHECKCARD  0522 MICROSOFT *OFFICE 365 msbill.info  WA 24204299142000150250646 RECURRING CKCD 4816 XXXXXXXXXXXX2500 XXXX XXXX XXXX 2500 | -9.99 |
| 05/24/19 | CHECKCARD  0523 AYNAX.COM AYNAX.COM   PA 24492159143637362548329 RECURRING CKCD 7399 XXXXXXXXXXXX2500 XXXX XXXX XXXX 2500 | -25.00 |
| 05/28/19 | CHECKCARD  0525 Amazon Prime Amzn.com/billWA 24692169145100337771018 RECURRING CKCD 5968 XXXXXXXXXXXX2500 XXXX XXXX XXXX 2500 | -120.41 |
| 05/28/19 | CHECKCARD  0526 AMZN DIGITAL*MN23P92D2 888-802-3080 WA 24431069146083703921499 CKCD 5818 XXXXXXXXXXXX2500 XXXX XXXX XXXX 2500 | -7.91 |
| 05/30/19 | CHECKCARD  0529 APL*ITUNES.COM/BILL 866-712-7753 CA 24692169149100529775500 RECURRING CKCD 5735 XXXXXXXXXXXX2500 XXXX XXXX XXXX 2500 | -0.99 |
| 05/30/19 | CHECKCARD  0529 TOWN OF SURFSIDE PRK AP SURFSIDE    FL 24210739150286410404547 CKCD 7523 XXXXXXXXXXXX2500 XXXX XXXX XXXX 2500 | -1.14 |
| **Subtotal for card account # XXXX XXXX XXXX 2500** | | **-$247.17** |
| **Total withdrawals and other debits** | | **-$30,809.25** |

PATRICE M TORRENCE   DBA   |   Account #           6406   |   May 1, 2019 to May 31, 2019

## Service fees

**Your Overdraft and NSF: Returned Item fees for this statement period and year to date are shown below.**

|  | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft fees | $0.00 | $35.00 |
| Total NSF: Returned Item fees | $0.00 | $70.00 |

**We want to help you avoid overdraft and returned item fees.  Here are a few ways to manage your account and stay on top of your balance:**

-   Set up Overdraft Protection in Online Banking to avoid declined transactions and save on overdraft fees
-   Sign up for Alerts (footnote 1) to get an email or text message when your balance becomes low

Please call us or visit us if you have any questions or to discuss your options.

(footnote 1) You may elect to receive alerts via text or email. Bank of America does not charge for this service but your mobile carrier's message and data rates may apply. Delivery of alerts may be affected or delayed by your mobile carrier's coverage.

The Monthly Fee on your Business Fundamentals Checking account was waived for the statement period ending 04/30/19. A check mark below indicates the requirement(s) you have met to qualify for the Monthly Fee waiver on the account.

☑ $250+ in new net purchases on a linked Business debit card

○ $250+ in new net purchases on a linked Business credit card

○ $3,000+ minimum daily balance in primary checking account

○ $5,000+ average monthly balance in primary checking account

○ $15,000+ combined average monthly balance in linked business accounts

○ enrolled in Business Advantage Relationship Rewards

For information on how to open a new product, link an existing service to your account, or about Business Advantage Relationship Rewards please call 1.888.BUSINESS or visit bankofamerica.com/smallbusiness.

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|---|---|---|---|---|---|
| 05/01 | 570.40 | 05/13 | 598.84 | 05/22 | 2,920.33 |
| 05/02 | 754.26 | 05/14 | 1,260.19 | 05/23 | 4,108.53 |
| 05/03 | 704.06 | 05/15 | 2,751.73 | 05/24 | 0.00 |
| 05/06 | 3,914.43 | 05/16 | 3,324.01 | 05/28 | 1,349.09 |
| 05/07 | 6,638.43 | 05/17 | 0.00 | 05/29 | 2,095.25 |
| 05/08 | 6,960.69 | 05/20 | 548.86 | 05/30 | 2,799.80 |
| 05/09 | 7,330.32 | 05/21 | 1,822.40 | 05/31 | 0.00 |
| 05/10 | 0.00 |  |  |  |  |